76208. SEGREE v. THE STATE.
(367 SE2d 882)

POPE, Judge.

Owen Anthony Segree brings this appeal from his conviction and sentence of trafficking in cocaine. His sole enumeration of error on appeal challenges the denial of his motion to suppress.

The evidence showed that on June 8, 1986 Senior Customs In-

spector Baxley and Customs Inspectors Nadeau and Vincent were on duty at the international arrival area at the Atlanta International Airport. This is a border entry point where persons arriving from foreign countries are processed for entry into the United States. While acting as a "rover" in the customs area on that date (i.e., out amongst the arriving passengers), Inspector Baxley saw that appellant was arriving from Jamaica and noticed that he was carrying a very large, soft-sided suitcase that appeared to have few contents. Baxley asked appellant to accompany her to a "secondary" table in the customs area and asked that he open his bag for inspection. The bag contained few articles of clothing, perhaps one shirt, one pair of pants, and a pair of shoes. When asked, appellant stated that he was traveling on business, that he would be staying at the Airport Hotel overnight, and that then he would be leaving to go to Miami for a couple of days before returning to Jamaica. When informed by Baxley that there was no "Airport Hotel," appellant stated that he had no reservation and would have to find a place to stay.

Based on her twenty years' service as a customs inspector Baxley became suspicious of appellant. He was traveling from a drug source country to a drug distribution city, which according to his passport he had done numerous times in the past. He claimed to be a business traveler staying for several days, but he was dressed in casual clothing with almost no extra clothing, had no business card and no hotel reservation. It was Baxley's experience that businessmen arriving from Jamaica dressed like businessmen everywhere and always had a reservation prearranged. More drugs have been seized from Jamaican flights than any other arriving international flights at the Atlanta airport.

With the permission of her superior, Baxley sent appellant to another room to be patted down by Inspectors Nadeau and Vincent. During the pat down procedure, appellant initially refused to shift his body weight to the toes of his shoes thereby lifting his heels from the floor. Nothing was discovered during the pat down of his clothing, but the procedure also required that appellant remove his shoes so that his shoes, socks and feet could be inspected. It is common practice to smuggle contraband concealed in a courier's shoes. Appellant removed his shoes and they were inspected. Each inspector noticed that appellant's shoes had two stitched seams; one seam was the normal top seam found on shoes where the sole was sewn to the upper, but the other was sewn of coarse thread, was irregular, and was sewn around the side of the sole. The shoes seemed unusually thick. When Inspector Vincent squeezed the heel of the shoes, they seemed unusually soft. A probe inserted into the heel revealed the shoes contained cocaine. Approximately 1.3 pounds of cocaine were removed from the soles of appellant's shoes.

The thrust of appellant's argument on appeal is that the search of his shoes was constitutionally unreasonable. He concedes that routine border searches, conducted for the purpose of controlling the movement of people and goods across our national boundaries, do not violate the Fourth Amendment's prohibition against unreasonable searches. However, he contends that the removal of his shoes went beyond a routine border search and constituted an unreasonable strip search. We disagree.

"We conclude that examination of a person by ordinary pat-down or frisk, the requirement that outer garments such as coat or jacket, hat or shoes be removed, that pockets, wallet and purse be emptied, are part of the routine examination of a person's effects which require no justification other than the person's decision to cross our national boundary. The single fact that such a search occurs at a border makes it reasonable within the meaning of the [F]ourth [A]mendment. We do not read 19 USC § 482 as requiring any suspicion other than the subjective response [i.e., "mere suspicion"] of a customs official who considers that the circumstances make such a search appropriate. The facts before us do not raise and our holding should not be read to reach a more intrusive search. The search of [appellant,] however, was no more intrusive than the permitted routine examination described above. His motion to suppress was properly denied. His conviction is affirmed." *United States v. Sandler*, 644 F2d 1163, 1169 (5th Cir. 1981); *United States v. Nieves*, 609 F2d 642 (2nd Cir. 1979), cert. den., 444 U. S. 1085 (1980); *United States v. Fitzgibbon*, 576 F2d 279 (10th Cir. 1978), cert. den. 439 U. S. 910 (1978); see *United States v. Chase*, 503 F2d 571 (9th Cir. 1974), cert. den., 420 U. S. 948 (1975).

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED MARCH 18, 1988.

*James W. Studdard*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.