A99A0971. SAFFORD v. THE STATE.
(522 SE2d 565)

POPE, Presiding Judge.

On July 4, 1997, Lavoy Safford arrived at Atlanta Hartsfield International Airport on an international flight. Another man, Clifton Dennis, who was traveling on the same flight was stopped by a customs officer who discovered that Dennis had 1,000 grams of cocaine tucked inside a wetsuit underneath his clothing. Later, a sec-

ond customs officer stopped Safford to question him. During the questioning, the officer observed that Safford appeared nervous and was sweating profusely. After inspecting Safford's luggage, the officer conducted a pat-down search. During the pat-down the officer noticed "there was a stiffness, and stuff, lumpy" under Safford's pants. The officer received authorization to conduct a partial strip search and discovered that Safford was wearing a wetsuit concealing four packages containing what was later determined to be 1,018 grams of cocaine.

Safford was charged with trafficking in cocaine. He was convicted following a bench trial and given the minimum sentence of 25 years in jail and a $1 million fine.[1] He appeals his conviction.

1. Safford first contends the trial court erred in denying his motion to suppress on the ground customs officials lacked sufficient justification to conduct a partial strip search.

Routine border searches may be conducted without a warrant and without any requirement of reasonable suspicion or probable cause. *United States v. Montoya de Hernandez*, 473 U. S. 531, 538 (105 SC 3304, 87 LE2d 381) (1985). Therefore, this Court has found that

> examination of a person by ordinary pat-down or frisk, the requirement that outer garments such as coat or jacket, hat or shoes be removed, that pockets, wallet and purse be emptied, are part of the routine examination of a person's effects which require no justification other than the person's decision to cross our national boundary.

(Citations and punctuation omitted.) *Segree v. State*, 186 Ga. App. 489, 491 (367 SE2d 882) (1988).

However, a strip search conducted at the border is considered non-routine and requires "reasonable" or "real" suspicion on the part of the customs official to meet the requirements of the Fourth Amendment. *United States v. Vance*, 62 F3d 1152, 1156 (9th Cir. 1995); *United States v. Adekunle*, 980 F2d 985, 987-988 (5th Cir. 1992). To meet this standard, the state must "demonstrate some objective, articulable facts that justify the intrusion as to the particular person and place searched." (Citations and punctuation omitted.) *United States v. Uricoechea-Casallas*, 946 F2d 162, 166 (1st Cir. 1991); *United States v. Handy*, 788 F2d 1419, 1420 (9th Cir. 1986). Courts have held that a strip search is justified if a person behaves in an articulably suspicious manner. *United States v. Carreon*, 872 F2d 1436, 1442 (10th Cir. 1989); *United States v. Vega-Barvo*, 729 F2d

---

[1] See OCGA § 16-13-31 (a) (1) (C).

1341, 1345 (11th Cir. 1984).

Safford arrived in this country on an international flight from a known drug source country. When questioned by a customs officer, Safford appeared nervous and was sweating profusely. In addition, when the officer conducted a routine pat-down, he noticed a lump around Safford's thigh. We find that these facts gave the officer reasonable suspicion to justify a partial strip search, and thus the trial court correctly denied Safford's motion to suppress. See *United States v. Vance*, 62 F3d at 1156; *United States v. Carreon*, 872 F2d at 1442.[2]

2. Safford next contends that his conviction should be reversed because the trial court failed to properly inquire whether he voluntarily waived his right to trial by jury.

> "Although a jury trial may constitutionally be waived, the defendant must personally and intelligently participate in the waiver. *Patton v. United States*, 281 U. S. 276 (50 SC 253, 74 LE2d 854) (1930). However, defendant's consent need not be in a particular, ritualistic form. Since form is unimportant, the only real issue is whether appellant intelligently agreed to a trial without jury. (Cits.) *Johnson v. State*, 157 Ga. App. 155 (1) (276 SE2d 667) (1981). When an accused questions the purported waiver of his right to a jury trial, the State must show on the record that the defendant personally, knowingly, voluntarily, and intelligently waived his right to a jury trial. (Cit.) *Jones v. State*, 212 Ga. App. 676, 679 (2) (442 SE2d 908) (1994); see *Sims v. State*, 167 Ga. App. 479 (1) (306 SE2d 732) (1983)."

(Punctuation omitted.) *Pirkle v. State*, 221 Ga. App. 657 (472 SE2d 478) (1996). One of the ways the state may prove this is by demonstrating from the record transcript that the defendant understood the rights he was waiving. *Smith v. State*, 230 Ga. App. 151, 152-153 (3) (495 SE2d 624) (1998).

The record in this case indicates that Safford appeared before the trial court at a hearing on his motion to suppress alongside Dennis, who was also charged with trafficking in cocaine. Both defendants were represented by the same attorney. After the court heard testimony and denied the motion, counsel represented that each defendant had decided to waive a jury trial and to have the court adjudicate his case based upon the evidence from the motion hearing. The judge then asked counsel to ask some questions on the record "to

---

[2] Moreover, to the extent that the officers involved were aware that another individual on the same flight had been found to be concealing cocaine in a wetsuit, they would have an additional justification to conduct a partial strip search.

make sure they understand what they are doing if we're going forward with a bench trial." Dennis readily indicated that he understood he was waiving his right to a jury trial, but Safford had some questions. The judge explained that the defendants' case was on a trial calendar for the following Monday. He told them they had a choice of having a jury hear the case the following week or having him hear the case and pass judgment that day. Safford initially nodded his head affirmatively when his counsel asked if he wanted to proceed with a bench trial, but then raised some additional questions. The district attorney represented that he had told the defendants that if they opted for a jury trial, he would write the parole board and recommend that they serve their full sentence. The judge told Safford he could decide whether to proceed that day or could wait until the following Monday to make his decision.

Dennis elected to proceed with a bench trial, and he was given the minimum sentence. Safford's counsel then represented that Safford had reconsidered and wished to proceed with the same stipulation as Dennis. The trial court then asked Safford if he agreed, and he replied, "Yes, sir."

We believe that the state met its burden of proving that Safford made an intelligent and knowing waiver of his right to trial by jury. The trial court clearly informed Safford of his option to proceed with a jury trial and that he had additional time to decide. He had the opportunity to observe Dennis's bench trial and to consult with his attorney before making his decision. Moreover, he had a clear incentive to waive his right to a jury trial in light of the recommendation of a minimum sentence and the state's position regarding the parole board. Accordingly, we find no error. See *Hansen v. State*, 222 Ga. App. 537, 539 (3) (474 SE2d 735) (1996); *McCollum v. State*, 201 Ga. App. 493, 494 (1) (411 SE2d 328) (1991).

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED SEPTEMBER 16, 1999.

*John A. Beall IV*, for appellant.
*Robert E. Keller*, District Attorney, *Clifford A. Sticher*, Assistant District Attorney, *Webb, Carlock, Copeland, Semler & Stair, Brian J. Amero*, for appellee.