320 Ga. 84
FINAL COPY

S24A0835. WIPFEL v. THE STATE.

WARREN, Justice.

After a jury trial in 2016, Kristian Wipfel was convicted of malice murder and other crimes in connection with the shooting death of eight-year-old Jai'mel Anderson.[1] In his sole enumeration

---

[1] The crimes occurred on January 6, 2015. In March 2015, a Peach County grand jury indicted Wipfel, Dennis Eason, Jr., Antonio Garvin, Jeremy Jackson, and Tevin Sams for malice murder, felony murder, aggravated assault against Anderson's brother J. A., making terroristic threats against Dejad Williams, and two counts of possession of a firearm during the commission of a felony. Garvin and Jackson both pled guilty to two counts of aggravated assault in exchange for their truthful testimony at trial. Their cases are not part of this appeal. Wipfel, Eason, and Sams were tried together from October 31 to November 9, 2016. The jury found Wipfel not guilty of making terroristic threats, but guilty of the remaining counts. The jury found Eason and Sams guilty of all counts, except, with respect to Sams, the count of making terroristic threats. Eason's case is not part of this appeal, and we affirmed Sams's convictions in *Sams v. State*, 314 Ga. 306 (875 SE2d 757) (2022). The trial court sentenced Wipfel to serve life in prison without the possibility of parole for malice murder, 20 concurrent years for aggravated assault, and five consecutive years for each of the firearm offenses. The trial court purported to merge the felony-murder count into the malice-murder conviction, but the felony-murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (434 SE2d 479) (1993). Wipfel filed a timely motion for new trial, which he later amended through counsel. After an evidentiary hearing in May 2021, the trial court entered an order denying the motion on February 10, 2022.

On May 3, 2022, Wipfel filed a motion to set aside the February 10, 2022

of error, Wipfel contends that the trial court plainly erred when it failed to instruct the jury on involuntary manslaughter as a lesser offense of malice murder. For the reasons explained below, we affirm.

1. As relevant to Wipfel's enumeration of error on appeal, the evidence presented at Wipfel's trial showed the following. Wipfel, Dennis Eason, Jr., Tevin Sams, Antonio Garvin, and Garvin's cousin Jeremy Jackson were together on the night of January 5, 2015. Eason was a drug dealer, and Wipfel sold drugs on his behalf. Eason was involved in a dispute over drugs and money with Dejad

order on the ground that he was not timely notified of its entry, and on May 20, 2022, Wipfel filed a notice of appeal. On May 31, 2022, the trial court entered an order setting aside and re-entering the February 10, 2022 order. On April 19, 2023, this Court vacated the trial court's May 31, 2022 order and dismissed Wipfel's appeal on the ground that the May 31 order was filed after the notice of appeal divested the trial court of jurisdiction, such that the May 31 order was a nullity, and Wipfel's notice of appeal was not timely filed from the date of the entry of the original order on the motion for new trial on February 10, 2022. We noted, however, that because Wipfel did not receive timely notice of the February 10, 2022 order, he could file another motion to set aside that order. See *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 148-149 (269 SE2d 426) (1980). On April 24, 2023, Wipfel filed such a motion. Nearly ten months later, on February 7, 2024, the trial court entered an order setting aside the February 10, 2022 order and re-entering it. Wipfel then filed a timely notice of appeal, and the case was docketed to the April 2024 term of this Court and submitted for a decision on the briefs.

Williams, who lived with his girlfriend and her sons, eight-year-old Anderson and six-year-old J. A., in an apartment in Fort Valley.

At trial, Garvin testified as follows. Wipfel, Eason, Sams, Garvin, and Jackson met at Jackson's apartment in Macon, where Eason discussed his dispute with Williams. Spurred on by Eason, the five men decided to drive to Fort Valley and confront Williams to "get [Eason's] product or his money back." When the men arrived at the apartment complex, they saw Williams standing outside an apartment building holding a gun. They parked near the back of the complex and got out of the cars. Eason and Sams were carrying handguns, and Eason told Wipfel, "[Y]ou have to do this for me." Eason, Sams, and Wipfel walked from the cars to the apartment complex. Eason walked back toward the cars, and then Garvin heard gunshots.

Moments later, Sams and Wipfel ran back to the cars; Wipfel got in Garvin's car; Eason and Sams got in Jackson's car; and they all fled to Jackson's apartment. There, Wipfel and Sams stated "that they shot into the doorway of an apartment." Wipfel also said that

Sams shot through the door first and then Wipfel started shooting; Garvin thought that Wipfel used Eason's gun.

Jackson told a similar story. He testified that on the evening of January 5, he, Wipfel, Eason, Sams, and Garvin discussed "an altercation between [Eason] and some other guy" before the group made "a decision to go down to Fort Valley." After the two cars parked near the apartment complex, Sams and Wipfel—who was carrying Eason's "silver and black gun"—got out and talked with Eason. Eason then got back in the car with Jackson, and Wipfel and Sams went toward the apartment complex. Jackson then "heard shots" and saw Wipfel and Sams "running back" to the cars. Wipfel got in Garvin's car, and Sams got in Jackson's car, and the men drove back to Macon.

Sams testified that he went to the apartment complex with the other men and, when they arrived, Wipfel and Eason went into the apartment complex, gunshots rang out, and Wipfel and Eason—who had a gun in his hand—then ran back to the cars. Sams admitted that he had owned a .40-caliber Glock handgun, but claimed that it

4

was stolen several months before the shooting.

Williams—the apparent target who was not wounded in the shooting—testified that in the early morning hours of January 6, he received multiple threatening text messages from a phone number he did not recognize and that he responded to the messages with threats of his own. Moments later, multiple shots were fired into the door to Williams's apartment. Williams was in the bedroom, and eight-year-old Anderson, who was playing a video game, and six-year-old J. A., who was sleeping, were in the living room. Anderson was shot twice: once in the leg and once in the upper abdomen. He later died.

Wipfel did not testify at trial. His defense strategy was to argue that he did not possess the requisite intent to commit malice murder because he was merely present at the scene of the crimes.

2. Wipfel contends that the trial court plainly erred by failing to instruct the jury on involuntary manslaughter based on reckless conduct as a lesser offense of malice murder. Wipfel did not ask for this instruction at trial but contends the trial court should have

5

given it on its own. Specifically, he argues that the evidence at trial showed that he lacked the requisite malice to shoot and kill Anderson and that he merely participated in shooting at Williams's apartment door, which amounted to the misdemeanor crime of reckless conduct, and—without any intent to do so—caused Anderson's death. See OCGA §§ 16-5-3 (a) ("A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony."); 16-5-60 (b) ("A person who causes bodily harm to or endangers the bodily safety of another by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person" is guilty of misdemeanor reckless conduct where "the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.").

As Wipfel concedes, because he did not object to the trial court's omission of an instruction on involuntary manslaughter based on

6

reckless conduct, we review his claim for plain error only. See OCGA § 17-8-58 (b); *Acosta v. State*, 311 Ga. 320, 327 (857 SE2d 701) (2021). For an appellant to establish plain error,

> first, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Lewis v. State*, 311 Ga. 650, 664 (859 SE2d 1) (2021) (citation and punctuation omitted). "An appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be." *Clark v. State*, 315 Ga. 423, 440 (883 SE2d 317) (2023) (citation and punctuation omitted).

(a) The State contends that we can decide the plain-error analysis on the basis that the trial court did not err at all in this

7

case. Citing *State v. Stonaker*, 236 Ga. 1 (222 SE2d 354) (1976), the State contends that "the law in Georgia remains that a trial court does not err when it does not sua sponte charge the jury on an unrequested instruction for a lesser-included offense." As we explain more below, we agree that the substantive rule *Stonaker* sets forth in this regard, which our Court has applied dozens of times since *Stonaker* was decided, is still valid and applies today—even after our appellate courts' application of plain-error review for "alleged jury instruction errors to which no objection was asserted at trial." See *State v. Kelly*, 290 Ga. 29, 31 (718 SE2d 232) (2011) (interpreting OCGA § 17-8-58). And we apply that rule here to conclude that Wipfel's claim of instructional error fails on plain-error review. In so doing, however, we explain our misgivings about the approach this Court took in *Stonaker* when it announced various rules of criminal law pertaining to jury instructions.

In *Stonaker*, this Court reviewed the Court of Appeals' decision reversing a defendant's conviction for child molestation on the basis that the trial judge had not charged the jury on a "lesser offense to

8

that offense delineated in the indictment . . . even though no such charge was requested in writing."[2] Our holding in that case was narrow: because "simple battery . . . is not a lesser crime included in the crime of child molestation," as Georgia's criminal code defined those offenses, "[i]t was therefore not error for the trial judge to fail to charge the jury on the crime of simple battery in this case." Id. at 2-3. Yet our Court proceeded to announce four "rules in this area of criminal law" in an apparent "attempt to clarify for the trial courts what must be charged and what may be charged and what need not be charged in the area of lesser included crimes in criminal trials." Id. at 2.[3] We did so without conducting any meaningful analysis and

---

[2] The Court of Appeals also concluded that the trial court had committed reversible error based on a separate instructional error that did not relate to lesser crimes. This Court held that conclusion to be erroneous. See *Stonaker*, 236 Ga. at 1, 3.

And although it is not at issue here, we note that "[a] criminal defendant is ordinarily required to present written requests for any desired jury instructions." *Woods v. State*, 291 Ga. 804, 809 (733 SE2d 730) (2012) (citation and punctuation omitted). See also OCGA § 5-5-24 (b); Uniform Superior Court Rule 10.3.

[3] The other three "rules" were:

> The trial judge must charge the jury on each crime specified in the indictment or accusation, unless the evidence does not

9

without citing any relevant authority—common law, decisional law, statute, or otherwise—and even though none of the four "rules" was required to resolve the defendant's claim of error.

The State has raised the second of the *Stonaker* "rules" in Wipfel's appeal: that "[t]he trial judge also may, of his own volition and in his discretion, charge on a lesser crime of that included in the indictment or accusation. However, his failure to do so, without a written request by the [S]tate or the accused, is not error." 236 Ga. at 2. Though that substantive legal rule was necessarily dicta in

---

warrant a conviction of such crime, or unless the [S]tate has affirmatively withdrawn a crime or stricken it from the indictment or accusation.

. . .

The [S]tate or the accused may, by written application to the trial judge at or before the close of the evidence, request him to charge on lesser crimes that are included in those set forth in the indictment or accusation, and his failure to so charge as requested, if the evidence warrants such requested charge or charges, shall be error.

An erroneous charge on a lesser crime to that set forth in the indictment or accusation does not rise to the level of reversible error, unless such charge was harmful to the accused as a matter of law.

*Stonaker*, 236 Ga. at 2. Because those legal rules are not at issue in this appeal, we do not analyze them here.

10

*Stonaker*,[4] this Court applied it as an alternative holding just days later in another criminal case. See *Smith v. State*, 236 Ga. 5, 10 (222 SE2d 357) (1976) (in rejecting appellant's claim that the trial court erred by failing to charge a lesser offense in the absence of a request to do so, stating that "today this court has held that it is not error for the trial court, in the absence of a written request, to fail to charge on a lesser crime included in the crime charged in the indictment or accusation . . . regardless of whether the evidence would have authorized or demanded such a charge," and citing and applying *Stonaker*, 236 Ga. at 1). And we have continued to apply that substantive rule, first announced in *Stonaker*, for decades. See also, e.g., *Welborn v. State*, 236 Ga. 319, 319 (223 SE2d 698) (1976); *Bouttry v. State*, 242 Ga. 60, 62 (247 SE2d 859) (1978); *Chastain v.*

---

[4] Indeed, a substantive rule about a trial court instructing a jury about a lesser crime has no legal bearing in a case like *Stonaker*, where the allegedly lesser crime on which the defendant wanted the jury instructed is not, in fact, a lesser crime. See *Stonaker*, 236 Ga. at 2-3 ("Under the facts of this case we hold that simple battery as defined in . . . the Criminal Code of Georgia is not a lesser crime of child molestation."). See also *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (explaining that "a statement in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand" is dicta) (citation and punctuation omitted).

*State*, 255 Ga. 723, 725 (342 SE2d 678) (1986); *Hawkins v. State*, 267 Ga. 124, 124 (475 SE2d 625) (1996); *Wyman v. State*, 278 Ga. 339, 341 (602 SE2d 619) (2004); *Brown v. State*, 285 Ga. 324, 327-328 (676 SE2d 221) (2009).

We acknowledge, however, some confusion about whether and how to apply *Stonaker* (and its progeny) in the wake of *Kelly*, 290 Ga. at 31-32, in which "this Court noted the similarities between OCGA § 17-8-58 (b) and Federal Rule of Criminal Procedure 52 (b), and looked to federal cases which articulated and applied the plain error standard found in that Rule." *Cheddersingh v. State*, 290 Ga. 680, 683 (724 SE2d 366) (2012).[5] The Court of Appeals recently grappled with this question in *Miles v. State*, 362 Ga. App. 288 (868 SE2d 262) (2022).[6] There, the defendant had been convicted of

---

[5] See *Smith v. State*, 292 Ga. 316, 319 (737 SE2d 677) (2013) ("The 'plain error' test adopted by this Court in *State v. Kelly* . . . authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings.").

[6] Other cases illustrate the different approaches taken when applying the rule from *Stonaker* (that is also at issue in this case) after articulating the

multiple criminal offenses and did not request that the jury be charged on two lesser offenses, yet later claimed on appeal that the trial court committed plain error by failing to charge the jury on the lesser offenses. In evaluating that argument, the Court of Appeals noted that it was not entirely clear whether, in such a circumstance, an appellate court should evaluate the claim of error under *Kelly*'s plain-error standard or under the substantive rule announced in *Stonaker* that a "trial judge never errs in failing to instruct the jury on a lesser included offense where there is no written request to so charge." See *Miles*, 362 Ga. App. at 291 (quoting *Martin v. State*, 349 Ga. App. 656, 659 (825 SE2d 227) (2019).[7] The court then went on to

plain-error standard review of unpreserved errors in jury instructions in *Kelly*. See, e.g., *Martin v. State*, 349 Ga. App. 656, 659 (825 SE2d 227) (2019) (applying *Stonaker* and no plain error review); *McMurtry v. State*, 338 Ga. App. 622, 625 (791 SE2d 196) (2016) (applying a *Stonaker* progeny and no plain-error review); *Styles v. State*, 329 Ga. App. 143, 149-150 (764 SE2d 166) (2014) (applying plain-error review only); *Anthony v. State*, 317 Ga. App. 807, 811-812 (732 SE2d 845) (2012) (same); *Ingram v. State*, 317 Ga. App. 606, 607 (732 SE2d 456) (2012) (applying both a *Stonaker* progeny and plain-error review "to the extent we are required to evaluate whether plain error resulted from the trial court's failure to charge on the lesser included offense").

[7] The Court of Appeals also raised a third possibility: evaluating the claim of error under a line of cases "developed before the enactment of OCGA § 17-8-58 in 2007" in which appellate courts apply a "predecessor statute to

13

analyze the defendant's claim of error "under the plain error standard of review of *Kelly* rather than the simplified no error approach of *Stonaker*," but nonetheless looked to *Stonaker* to determine whether there was "a clear or obvious error that substantially affected the outcome of the proceedings." *Miles*, 362 Ga. App. at 293-294 (citing *Kelly*, 290 Ga. at 33). It then applied the substantive rule from *Stonaker* to conclude that the trial court had not plainly erred by not instructing on the lesser offense that the defendant did not request at trial, but later complained of on appeal. Id. at 294.

---

OCGA § 5-5-24 (c)," which said that "notwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." See *Miles*, 362 Ga. App. at 292. The cases taking this approach were decided before *Kelly* in 2011. As we explained in *Kelly*, "[p]rior to the enactment of OCGA § 17-8-58, OCGA § 5-5-24 (c) was the exclusive avenue in all cases for appellate review of jury instruction errors that had been waived[.]" *Kelly*, 290 Ga. at 32 n.3. In *Kelly*, we held that "under OCGA § 17-8-58 (b), appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions." See id. at 32. And we clarified that our construction of OCGA § 17-8-58 (b) was "consonant with" OCGA § 5-5-24 (c). See id. All of which is to say that in a post-*Kelly* world, appellate courts should not rely on the line of cases the Court of Appeals described above when evaluating claims of alleged error in jury instructions to which no objection was raised at trial. See *Kelly*, 290 Ga. at 29.

14

We take this opportunity to clarify that the plain-error review standard set forth in OCGA § 17-8-58 (b) and applied in *Kelly* did not undermine the validity of the substantive legal rule first announced in *Stonaker* that a trial court's failure to charge the jury on a lesser crime without a written request to do so "is not error." *Stonaker*, 236 Ga. at 2. That is because *Stonaker* articulated a substantive rule about whether a trial court's failure to give a particular jury instruction was legal error; it did not set forth a framework governing when a claim of instructional error is subject to appellate review. Compare *Kelly*, 290 Ga. at 32 (overruling decisions from this Court and the Court of Appeals decided after enactment of OCGA § 17-8-58 (b) concluding—without addressing plain error—that appellate review of jury instructions was waived if claims of instructional error were not raised below, and overruling such cases to the extent such cases could be construed as permitting something other than "appellate review for plain error . . . whenever an appealing party properly asserts an error in jury instructions").

We also take this opportunity to express our disapproval of the

way our Court announced legal "rules" in *Stonaker* on its own accord, without citing any authority in support, in a case that did not present the issues the rules would resolve (that is, in dicta). See *Stonaker*, 236 Ga. at 2. See also *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008). Whatever good intention our Court may have had in doing so,[8] our job is to discern and apply the law—not to create it. See, e.g., *Sons of Confederate Veterans v. Henry County Bd. of Commrs.*, 315 Ga. 39, 52 n.10 (880 SE2d 168) (2022) ("The limitations on the judicial power prevent us from rendering advisory opinions on Georgia law."); *Fulton County v. City of Atlanta*, 299 Ga. 676, 677 (791 SE2d 821) (2016) ("It is a settled principle of Georgia

---

[8] Justice Hill, for example, stated in a special concurrence that he felt "compelled . . . to state [his] reasons" for signing onto the portion of the majority opinion that announced the "no error" legal rule discussed above. In that special concurrence, he explained that the rule in place before *Stonaker* was decided—that a "trial judge was required to charge, without request, the law applicable to lesser included offenses, where the evidence would have authorized conviction on a lesser offense"—allowed for gamesmanship insofar as a criminal defendant who was "accused of an offense, as to which there was a lesser included offense as shown by the evidence" at trial could "avoid referring to the lesser offense at his first trial and if the trial judge only charged the jury according to the defendant's announced theory of defense," then he would be "virtually assured of a second trial" because of the trial court's instructional error. See *Stonaker*, 236 Ga. at 3-4.

law that the jurisdiction of the courts is confined to justiciable controversies, and the courts may not properly render advisory opinions.").[9]

(b) Having clarified that the substantive rule from *Stonaker* at issue in this case remains valid, we now apply that rule here. To prevail on his claim of instructional error, Wipfel must demonstrate that the trial court's failure to charge on a lesser offense constituted legal error. But no one asked for such a charge at trial, and the failure to charge on a lesser crime than the crime included in the indictment, "without a written request by the [S]tate or the accused, is not error." See *Stonaker*, 236 Ga. at 2; *Smith*, 236 Ga. at 10. Having failed to demonstrate legal error, Wipfel's claim of plain error fails.

*Judgment affirmed. All the Justices concur, except Boggs, C. J., who concurs in judgment only in Division 2.*

---

[9] Some of us have expressed concern about the soundness of the *Stonaker* rule articulated above and would be willing to revisit it in an appropriate case.

Decided October 15, 2024.

Murder. Peach Superior Court. Before Judge Mincey.

*Ahmad R. Crews*, for appellant.

*Anita R. Howard, District Attorney, Cynthia T. Adams, Daniel P. Bibler, Neil A. Halvorson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Michael A. Oldham, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.