NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 30, 2025

S25A0776.  LEWIS v. THE STATE.

LAGRUA, Justice.

Appellant Dwight Lewis challenges his convictions for malice murder and other crimes in connection with the shooting death of Keosha Tinch.[1] Lewis contends that the evidence was legally

---

[1] The crimes occurred on February 2, 2017. On November 14, 2017, a Fulton County grand jury indicted Lewis for malice murder (Count 1), six counts of felony murder (Counts 2-7), four counts of aggravated assault with a deadly weapon (Counts 8-11), criminal damage to property (Count 12), possession of a firearm during the commission of a felony (Count 13), and possession of a firearm by a convicted felon (Count 14). At a trial from November 5 to 8, 2018, the jury found Lewis guilty of all charges. The trial court sentenced Lewis to life in prison with the possibility of parole for malice murder, plus a consecutive term of 25 years in prison. Specifically, the trial court sentenced Lewis to 20 years in prison on three of the aggravated assault counts, with Count 9 running consecutively to Count 1, and Counts 10 and 11 running concurrently with Count 9; a consecutive term of five years for possession of a firearm during the commission of a felony; and a concurrent term of five years for possession of a firearm by a convicted felon. The felony murder verdicts were vacated by operation of law, and one aggravated assault count (Count 8) merged with the malice murder conviction. Lewis filed a timely motion for new trial, which he twice amended through new counsel. After an evidentiary hearing on July 9, 2024, the trial court entered an order denying

insufficient to support his convictions and that the trial court plainly erred in failing to instruct the jury on the lesser offense of voluntary manslaughter. However, the evidence was very strong and included testimony from an eyewitness who knew Lewis. Additionally, there can be no plain error for the trial court's failure to charge on a lesser offense without a written request. Accordingly, Lewis's claims fail, and we affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that late in the evening of February 1, 2017, and into the morning of February 2, Lewis argued several times with his former girlfriend, Dyreaka Tucker, about childcare for their two children. A security guard in the apartment complex where Tucker lived was familiar with Tucker and saw her frequently with Lewis, whom he believed to be Tucker's boyfriend. Around midnight on February 1, the security guard observed Lewis and Tucker arguing and asked Tucker if she was "okay." Tucker said she

the motion on October 31, 2024. Lewis filed a timely notice of appeal, and the case was docketed in this Court to the April 2025 term and submitted for a decision on the briefs.

was fine. About 15 minutes later, the security guard saw Lewis and Tucker arguing again and asked her, "You sure everything okay?" Tucker said loudly, "I keep telling him I don't want to be with him anymore." Lewis asked her to repeat what she said, and when she did, Lewis responded, "Okay, I got something for you." About 30 minutes later, as Tucker got into the backseat of a car to go out with friends, she said, in a laughing manner, that her "baby daddy" or "boyfriend" "say he was going to kill me." Tucker was in the backseat with the victim, Tinch. In the front seat were two men, Mark Caldwell and Bara Samb. As Samb started to back out of the parking space, Lewis walked to the front of the car with a handgun and began shooting. Tinch was struck in the head by a single bullet and died immediately as a result. Tucker jumped out of the car and began running. As she approached the security guard, who had heard the shots, she yelled, "He's trying to kill me! He's trying to kill me!" After Tucker said the shooter was "Dwight," the security guard asked whether it was her "boyfriend," and Tucker said, "Yeah! Yeah!"

Tucker was not questioned by officers at the scene, but she spoke to officers on February 2. In her statement to officers, Tucker initially said she did not know who the shooter was. However, she later identified Lewis as the man who shot into the car, and on a photo of Lewis provided by the officers, she wrote "Walk in front of the car with gun fired a shot" and then wrote under that statement and next to Lewis's picture, "D. Lewis." She also told the officers that Lewis had choked her and slammed her on a car and that these actions were witnessed by the security guard, but at trial, she admitted this allegation was not true.

Sometime later, Tucker made a post on Instagram, stating, "These … Tryna Act Like Im Just a Big Ole Snitch But Why Would You shoot At A Car Wit 4 Innocent People In It.. [wondering emoji]? All Because I Left You Alone!!" She added the comment, "This A Free World I Can Go Wherever Whenever And I Was Cool Wit Them Folks Now I Gotta Be Beefing With Folks All Over Atlanta All Because A [person] Was In His Feelings." A friend of Lewis's responded on the same post, "Man if u don't f**kin delete this s**t

NOW!!"  Another friend of Lewis's commented, "Snitch ass hoe." In her next post, Tucker wrote, "And When It Comes To That Dwight Situation I Promise You That's Something You Do Not Wanna Talk About … I'll Show You A Police Now Keep Talking [police officer emoji]!!" Also on that post, Tucker "tagged" a friend of Lewis's and commented, "YOU WANNA GIVE INSTAGRAM A SHOW OR WHAT [wondering emoji] ??"

On August 3, 2017, Lewis was apprehended on a fugitive warrant in Detroit, Michigan, and gave a false name and false birthdate to the law enforcement officer. When the information he provided to the officer came back as "no record," the officer asked Lewis if he would be willing to submit to a digital fingerprint analysis. Lewis responded, "You guys got me," and after his identity was established through the fingerprint analysis, he stated that he "knew this day was coming." Lewis did not have a weapon on him at the time of his arrest, and the murder weapon was never located.

After Lewis was arrested, Tucker began communicating with him on a weekly basis. In late August 2017, Tucker posted photos of

herself and Lewis smiling and embracing, with the comment, "What's Understood Ain't Be Explained" and the "hashtags" "MCM" and "Faeva," which Tucker explained meant "Male Crush Monday" and "Forever." In early October 2017, Tucker posted a photo of a computer screen showing Lewis on the telephone with her while he was in jail, with the comment "Date Wit Her Twin/Boyfriend" and the "hashtag," "Free Him," which Tucker testified referred to Lewis. A few weeks later, Tucker posted a screenshot from a video of herself and Lewis, in which Lewis said, "She never gone leave me y'all." She added the comment "Its Deeper Than Y'all Think [five heart emojis]." In January and April 2018, Tucker wrote two notes addressed, "To whom it may concern," stating that Lewis had nothing to do with the shooting.

In her trial testimony, Tucker first claimed that she did not remember the shooting, testifying only that Lewis was "outside the car." As the State's direct examination continued, the prosecutor asked, "Who shot into the car with four people?," and Tucker responded, "Dwight." As the direct examination continued, Tucker

testified that she saw Lewis with a gun in his hand when he came up to the car she was in, although she also said she did not see who was shooting. She also explained that she wrote the notes absolving Lewis of responsibility because "I was being threatened by people off social media and the streets and I got kids and I don't have time for that." Still later in her testimony, Tucker said that she did not see the face of the shooter; that she lied and said it was Lewis because she was mad at him; and that she lied in her testimony on direct when she said Lewis was the shooter.

1. Lewis contends that the evidence was not sufficient as a matter of constitutional due process to support his convictions under *Jackson v. Virginia*, 443 US 307, 319 (1979). Specifically, he argues that the State failed to prove beyond a reasonable doubt that he was the shooter because Tucker's testimony identifying him as the shooter was not corroborated. He also argues that, because Tucker provided inconsistent statements, "a reasonable jury should not have been able to credit her testimony."

As an initial matter, corroboration of an eyewitness's testimony

7

is not a requirement to sustain a conviction as a matter of federal due process. See *Sims v. State*, 321 Ga. 627, 631 (2025). When we evaluate "a due process challenge to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Shellman v. State*, 318 Ga. 71, 74 (2024) (cleaned up). And "[w]e defer to the jury's resolution of any conflicts in the evidence, the credibility of witnesses, and the drawing of reasonable inferences from the facts." *Hooks v. State*, 318 Ga. 850, 852 (2024). See also *Ridley v. State*, 315 Ga. 452, 455 (2023) ("In [assessing the constitutional sufficiency of the evidence], we do not evaluate witness credibility, resolve inconsistencies in the evidence, or assess the weight of the evidence; these tasks are left to the sole discretion of the jury.").

As set forth above, in statements to the security guard and police and in her trial testimony, Tucker identified Lewis as the shooter. The jury was authorized to credit her identifications of

Lewis as the shooter and to reject her claims that she did not see who the shooter was and that she lied about identifying him. See *Agee v. State*, 311 Ga. 340, 343 (2021) (holding that the jury was authorized to credit witnesses' inculpatory statements over their recantations). The fact that a jury resolves the conflicts in the evidence or the credibility of the witnesses adversely to the appellant does not render the evidence insufficient. See id. See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

In addition to Tucker's statements and testimony, the jury heard the security guard's testimony that he observed Lewis and Tucker arguing, with Lewis threatening that he "had something for her," as well as Caldwell's and Samb's testimony that Tucker said her "baby daddy" or "boyfriend" threatened to kill her. Additionally, the testimony about Lewis's flight — that Lewis fled to Detroit after the shooting and gave a false name when he was arrested — was further evidence of his guilt. See *Harris v. State*, 313 Ga. 225, 231 (2022) (explaining that it is "universally conceded that the fact of an

accused's flight, … assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself"). Thus, when properly viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient as a matter of constitutional due process to authorize a rational jury to find Lewis guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Ivory v. State*, ___ Ga. ___, ____ (2025), S250862, slip op. at 6-7 (Ga. Aug. 12, 2025) (concluding that evidence was sufficient despite appellant's challenges to the credibility of eyewitnesses who identified him as one of two perpetrators of the home invasion, robbery, and murder).

2. Next, Lewis argues, while acknowledging that he did not request a jury instruction on voluntary manslaughter as a lesser offense of malice murder, that the trial court committed plain error by failing to instruct the jury on that lesser offense. To establish plain error, an appellant must show that "(1) the alleged error was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which

10

ordinarily means showing that it affected the outcome of the trial." *Whittaker v. State*, 317 Ga. 127, 133 (2023) (quotation marks omitted). If the appellant establishes these three prerequisites, we have "the discretion to remedy the error only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks omitted). Lewis's claim fails the plain error test because "the failure to charge on a lesser crime than the crime included in the indictment, without a written request by the State or the accused, is not error." *Wipfel v. State*, 320 Ga. 84, 91 (2024) (cleaned up). Because Lewis did not submit a written request to charge on the lesser offense of voluntary manslaughter, he cannot demonstrate legal error in the trial court's failure to sua sponte give such a charge, and thus the claim of plain error fails. See id.

*Judgment affirmed. All the Justices concur.*