311 Ga. 340
FINAL COPY

S21A0372.  AGEE v. THE STATE.

LaGRUA, Justice.

Appellant Derrick Agee was found guilty at a bench trial of malice murder and other crimes in connection with the shooting death of Steven Lowe and assault of Monitaaz Simmons.  On appeal, Appellant contends that the evidence was insufficient to support his convictions because the two witnesses who identified him as the shooter later recanted their statements.  Additionally, Appellant challenges the validity of his waiver of his right to a jury trial. Concluding these claims lack merit, we affirm. [1]

---

[1] The shooting occurred on December 7, 1997.  On August 10, 2001, a Fulton County grand jury returned a six-count indictment against Appellant, charging Appellant with malice murder, felony murder, one count of aggravated assault against Lowe, one count of aggravated assault against Simmons, and two counts of possession of a firearm during the commission of a felony.  At the conclusion of a bench trial from February 13 to 14, 2006, the judge found Appellant guilty on all counts.  On February 24, 2006, the trial court sentenced Appellant to serve a life sentence for malice murder; 20 consecutive years on the aggravated assault charge against Simmons; and 10 consecutive years for each firearm possession charge.  The remaining charges

1. Viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial showed that in the early morning hours of December 7, 1997, Appellant went to Club Escape in Fulton County with friends to celebrate a birthday and paid for a VIP room for the celebration. Appellant arrived with friends in Appellant's car, a black Oldsmobile Cutlass with a white top, a decorative racing stripe, and gold rims. The same night, Lowe, a former security guard at the club, was fired for carrying a gun inside the club in direct violation of the club's policy. However, Lowe was allowed to remain in the club after being terminated.

---

merged for sentencing purposes or were vacated by operation of law. The trial court ordered Appellant to serve the sentence in this case after completion of Appellant's life sentence in a separate murder case. See *Agee v. State*, 279 Ga. 774 (621 SE2d 434) (2005). Appellant timely filed a motion for new trial on February 27, 2006.

In July 2019, the trial court held a status conference, at which the court granted Appellant's request to have 90 days to consider whether to proceed with the motion for a new trial. At another status conference on October 17, 2019, Appellant, through counsel, requested that the court deny his motion for new trial to enable him to pursue an appeal. The trial court granted the request and denied the motion for new trial on October 31, 2019. Appellant then filed a timely notice of appeal on November 26, 2019, amending it on December 10, 2019. This Court docketed Appellant's case to the term beginning in December 2020, and the case was submitted for a decision on the briefs.

Sometime after Appellant and his group arrived, Reginald Lindsay, the club's manager, witnessed a fight break out between Lowe and a member of Appellant's group known as "Peanut." About a dozen patrons got involved, including some of Appellant's friends. Club security escorted Appellant and most of his group out of the club. Lowe and Peanut were separated inside the club to avoid further altercations.

Lindsay testified that as he was removing the disorderly patrons from the club, he heard three gunshots ring out; Lowe had stepped outside and fired warning shots into the air. Lindsay demanded that Lowe stop, and Lowe went back inside the club.

Patrons who had left the club following the altercation started getting back out of their cars and returning to the club. Appellant confronted Lindsay and demanded a refund for the VIP room. Lindsay denied the refund and, noting that he was a reserve sheriff's deputy, told Appellant to go home. Appellant responded, "No. It ain't over. And if you are the police, you better call a thousand more because we're about to light this motherf***** up." Lindsay then

3

testified that he saw Appellant go to an older model car with a stripe across the hood and heard the trunk open. Lindsay then returned to the club.

Inside the club, Lindsay discovered Lowe and Peanut in the lobby; Lowe was upset and still had the gun in his hand. Peanut and Lindsay began trying to persuade Lowe to release the gun. Meanwhile, another club security guard came inside and reported that he saw someone with a gun in the parking lot. Lindsay went to find a phone to call police, at which point multiple shots rang out in the lobby. Lowe was shot 11 times and pronounced dead at the scene; one other patron, Monitaaz Simmons, was shot in the leg, but survived. The medical examiner testified that Lowe's cause of death was multiple gunshot wounds to the back, right arm, and both legs. When police arrived, cars were fleeing the parking lot.

Eleven days after the shooting, investigators interviewed Tobias Mathews, a member of Appellant's group on the night of the shooting, and he identified Appellant as the shooter in a written statement to police. According to Mathews' written statement,

4

Appellant went to his car to get his gun moments after Lowe fired warning shots. Appellant then went to the entrance of the club, opened the door with his leg, and shot "[a]bout 17" times into the club. Appellant shot until he ran out of bullets and, as he was shooting, shouted "I told you I was going to kill you, motherf*****." Mathews and two other members of the group pulled Appellant away. Appellant jumped into the passenger seat of his car, and the car sped away. Based on this information, Appellant was arrested on December 19, 1997.

About four days after the interview with Mathews, police received a tip about a black Oldsmobile Cutlass with a white top and white racing stripe, covered by a tarp and parked behind a house. Police determined that the house the car was parked behind belonged to Appellant's mother.

Terence Johnson, who was working in the parking lot when the shooting occurred, testified that after the shooting, he saw a two-toned, older model car pulling away.

On April 11, 2001, while Detective Brett Zimbrick was

conducting an investigation into a home invasion and shooting that occurred in Derrick Byrd's apartment, Byrd, who was a member of Appellant's group on the night of the December 7, 1997 shooting, sought to give Zimbrick information about the club shooting. Byrd recalled the events of that night and identified Appellant as the shooter. Byrd stated that after security removed Appellant's group from the club, Appellant was upset about how the club security officers treated him. Then, after Lowe fired the warning shots, Byrd saw Appellant run to his car and heard, from the direction of Appellant's car, a pistol slide being pulled back. Byrd saw Appellant approach the club with a pistol and fire two rounds at the club door. Appellant told Byrd to "get away from the door because I am fixin' to shoot this motherf***** up." Byrd stated that Appellant emptied his gun and said, "I am out" before fleeing in his car.

Appellant argues that the evidence was insufficient to support his convictions because only Mathews and Byrd were eyewitnesses to the shooting, and at trial, both witnesses recanted their statements to police identifying Appellant as the shooter. Mathews

testified that he did not recall providing a statement to police, that he did not remember some of the events that were in his statement to police, and that he did not see a shooter that night. Byrd testified that the statement he provided to police was "full of lies" and that he did not see the shooter because he had already fled the scene. Appellant argues that this evidence was insufficient to prove his guilt beyond a reasonable doubt. We disagree.

When evaluating the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted). In this analysis, "we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence." *Wimberly v. State*, 302 Ga. 321, 323 (1) (806 SE2d 599) (2017) (citation and punctuation

7

omitted).

Here, the record shows that Appellant admitted that he was at the club on the night of the shooting, that he was upset with security for forcing him out of the club, and that Lowe was one of the people who angered him. Additionally, after Appellant argued with Lindsay about a refund, Lindsay heard Appellant threaten to "light this motherf***** up." Johnson, the parking attendant employee, witnessed a two-toned, older model vehicle matching the description of Appellant's car screeching away after the shooting. A car matching that description was later found at Appellant's mother's house, hidden under a tarp.

Moreover, despite their later recantations, Mathews and Byrd both identified Appellant as the shooter in written statements to police. Mathews told police that Appellant had gone to his car, retrieved a gun, and returned to the club where he shot multiple times through the doorway of the club. Byrd told a similar story identifying Appellant as the shooter, adding that Appellant was angry and seeking retribution.

8

Appellant argues that, without the written statements of Byrd and Mathews, the evidence merely places Appellant inside the club on the night of the shooting. However, the jury was authorized to credit these witnesses' statements to police over their recantations at trial. See *Bullard v. State*, 307 Ga. 482, 484-485 (1) (837 SE2d 348) (2019); see also *Cartwright v. Caldwell*, 305 Ga. 371, 379 (2) (a) (825 SE2d 168) (2019); *Robbins v. State*, 300 Ga. 387, 391 (793 SE2d 62) (2016) ("A prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence. . . ." (citation and punctuation omitted)). "The fact that the [factfinder] resolved the conflicts in the evidence or credibility for the witnesses adversely to [Appellant] does not render the evidence insufficient." *Bullard*, 307 Ga. at 485 (1) (quoting *Jackson v. State*, 306 Ga. 706, 708 (832 SE2d 809) (2019)). We therefore conclude that the written statements, together with the other evidence presented at trial, was more than sufficient to authorize a rational finder of fact to determine that Appellant was guilty beyond a reasonable doubt of the crimes for which he was

9

convicted. See *Jackson*, 443 U. S. at 319.

2. Appellant contends that he did not knowingly, intelligently, and voluntarily waive his right to a jury trial. This argument is meritless.

The constitutional right to a jury trial may be waived only if the State proves beyond a reasonable doubt that a defendant did so knowingly, voluntarily, and intelligently. See *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002) (jury trial waiver by defense counsel in the presence of the defendant was not enough to constitute the defendant's own knowing, intelligent, and voluntary jury trial waiver). The State can do so by either (1) showing on the record that the defendant was cognizant of the right being waived; or (2) supplementing the record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly, voluntarily, and intelligently made. See *Johnson v. Smith*, 280 Ga. 235, 236 (626 SE2d 470) (2006). We review a trial court's acceptance of a waiver of a constitutional right for clear error. See *Lyman v. State*, 301 Ga. 312, 317 (2) (800 SE2d 333) (2017); *Seitman v. State*,

10

320 Ga. App. 646, 646 (740 SE2d 368) (2013).

Here, the record indicates that Appellant made a knowing, voluntary, and intelligent waiver of his right to a jury trial. Before the bench trial, the following colloquy occurred on the record:

> COURT: . . . Well let me — Mr. Agee, I understand that you and — I'm making an assumption, but I want to confirm it, that you and [defense counsel] discussed this matter of you electing to have a bench trial and the pros and cons of doing that. Did you not?
> APPELLANT: Yes, sir.
> COURT: Okay. And the law requires that the defendant personally waive the right to a jury trial; because obviously, a jury trial is a constitutional right that everyone has guaranteed to them. Do you understand you've got a right to a jury trial if you chose to have one?
> APPELLANT: Yes, sir.
> COURT: Okay. And with a bench trial, the court will make the — will be the finder of fact as well as the person that presides over the law, as opposed to in a jury trial, the jury would be the fact-finder and the court would provide the law for the jury. Do you understand the difference in that?
> APPELLANT: Yes, sir.
> COURT: All right. And you, in fact, do you want to waive your right to a jury trial and elect to have a bench trial?
> APPELLANT: Yes, sir.

Appellant argues that this colloquy fails to establish that his waiver was voluntary or that he understood the ramifications of

11

making such a waiver.  We disagree.

When a defendant seeks to waive his or her right to a jury trial, "[a] trial court should ask the defendant sufficient questions on the record so that the court can ensure the defendant's waiver is knowing, voluntary, and intelligent." *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002).  Here, the trial court asked Appellant on the record whether he was electing to waive his right to a jury trial and whether he understood the advantages and disadvantages of that choice.  The court also highlighted the fact that a jury trial was the Appellant's constitutional right, and the court made clear that the judge, not a jury, would be the finder of fact in his case. Finally, the court confirmed a second time with Appellant that he wanted to waive his right to a jury trial and elect to have a bench trial instead.  In each instance, Appellant responded that he understood and was opting to forgo a jury trial.  Based on the record, we conclude that Appellant personally, knowingly, intelligently, and voluntarily waived his right to a jury trial.  See *Watson*, 274 Ga. at 690-691 (2) (waiver was knowing, intelligent, and voluntary where

12

defendant was asked personally on the record whether he wanted to proceed with a bench trial, and defendant orally affirmed the waiver).

Appellant also contends that additional measures should be taken in order to ensure that a defendant's waiver is knowing, intelligent, and voluntary, such as specific inquiries into the defendant's education and mental status, or allowing the defendant the opportunity to watch another bench trial before making a decision, citing *Johnson v. State*, 157 Ga. App. 155, 155-156 (2) (276 SE2d 667) (1981) (noting that the trial court inquired into education and mental status and gave the defendant additional time to consider the advantages and disadvantages of a bench trial), and *Safford v. State*, 240 Ga. App. 80, 82-83 (2) (522 SE2d 565) (1999) (noting that the trial court gave the defendant the opportunity to watch a bench trial before proceeding with his own).

However, in both of those cases, the specific inquiries and the opportunity to observe a bench trial were afforded after the trial court determined that the defendant knowingly, intelligently, and

13

voluntarily waived a jury trial, and were additional measures that the trial court elected to provide. Such measures are not categorically required for a trial court to establish that a defendant's waiver is knowing, intelligent, and voluntary. See *Brown v. State*, 277 Ga. 573, 574 (2) (592 SE2d 666) (2004) (defendant personally, knowingly, voluntarily, and intelligently waived a jury trial after he was informed of the various aspects of a jury trial and the consequences of relinquishing that right, and then "only after receiving [defendant's] oral assurance that he wished to waive trial by jury" (citation and punctuation omitted)). Therefore, we decline to extend the requirements for a valid jury trial waiver as asserted by Appellant, the trial court did not clearly err in finding such a waiver, and this enumeration of error is without merit.

*Judgment affirmed. All the Justices concur.*

Decided April 19, 2021.

Murder. Fulton Superior Court. Before Judge Millender.

*Cody J. Jung*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Juliana Sleeper, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General,* for appellee.