**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 4, 2025

S25A0034.  BYRD v. THE STATE.

BOGGS, Chief Justice.

Appellant Mickey Lewis Byrd, Jr., challenges his bench-trial convictions for malice murder and other crimes in connection with the shooting death of Steven Moore. Appellant contends that the evidence was constitutionally insufficient to support his convictions, that he did not knowingly, intelligently, and voluntarily waive his right to a jury trial, and that he was denied the effective assistance of counsel. For the reasons set forth below, we affirm.[1]

---

[1] The crimes occurred on November 3, 2019. On February 4, 2020, an Evans County grand jury indicted Appellant for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), possession of a firearm during the commission of a felony (Count 4), and possession of a firearm by a convicted felon (Count 5). At a bench trial held on January 12, 2022, the trial court found Appellant guilty of all counts except Count 5. The trial court sentenced Appellant to serve life in prison with the possibility of parole for Count 1 and a term of five years for Count 4, running consecutive to Count 1. Although the trial court purported to merge the felony-murder count into the

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the evening of November 3, 2019, Moore, who was also known as "Brutus," and others organized a party for teenagers at a club in Claxton, located in Evans County. While the party was intended for teenagers, adults were also present, serving as chaperones. Witnesses saw both Appellant and Moore before and during the party. At some point during the party, Appellant, who was a chaperone, remarked that if someone at the party "act[s] up, I have my stick on me . . . ," meaning that if someone at the party "goes off wrong or gets on the wrong track, [Appellant had a gun in his] pocket." Soon after, the party was "shutdown" because a "dis song" was played. The song created "a lot of chaos and a lot of drama. So, they stopped playing music and cut on the lights, and everybody left the building." As everyone at the

malice-murder count, the felony-murder count was vacated by operation of law. See, e.g., *Williams v. State*, 316 Ga. 147, 153 (886 SE2d 818) (2023). Count 3 merged. On February 3, 2022, Appellant filed a motion for new trial, which he amended with new counsel on April 10, 2023. After an evidentiary hearing on April 23, 2024, the trial court entered an order denying the motion on May 13, 2024. Appellant filed a timely notice of appeal, and the case was docketed in this Court to the term beginning in December 2024 and submitted for a decision on the briefs.

party began to filter outside, witnesses saw Moore move his car from one side of the club's parking lot to another side. After Moore parked and got out of his car, Appellant approached him.

None of the witnesses who testified knew the substance of the conversation between Appellant and Moore, but some witnesses testified that the two appeared to be involved in an "altercation." Some witnesses saw the altercation start, while others inferred a dispute from the small crowd forming around Appellant and Moore, along with efforts to separate the two. The altercation escalated, and Moore slapped Appellant in the face. Immediately after being slapped, Appellant was seen walking to his or someone else's car and grabbing a black gun. Appellant then walked back to where Moore's car was parked. As Moore got in his car, preparing to leave the club, two witnesses, Sabrina Williams and Samira Williams, saw Appellant shoot Moore three times. Another witness testified that she heard the shots but did not see Appellant shoot Moore. There was also other evidence showing that Z.M., Appellant's girlfriend's teenage daughter, who was attending the party, sent several text

messages to her mother that night, stating, "Mickey probably going to jail," "I saw everything[,] I can't believe I saw tha[t]," and "[Mickey] killed Brutus."[2]

After the shots were fired, some of the teenagers frantically ran back into the club, looking for somewhere to hide. When the teenagers were asked what happened by those still inside the club, they responded, "Mickey out there shooting." Appellant then ran into the club with the black gun in his hand. When Appellant came in the club he was screaming, "Somebody help me, somebody help me." Appellant left shortly thereafter and was seen running down a residential street near the club. Appellant's girlfriend told investigators that the night of the shooting, he came to her brother's home, where she was visiting at the time, and told her that he did not mean to kill Moore.[3]

---

[2] Although Z.M. initially told investigators during a recorded interview, which was played at trial, that she saw Appellant shoot Moore, she testified at trial that she did not see the shooting and only heard the shots.

[3] At trial, Appellant's girlfriend testified that it was not Appellant who told her that he did not mean to kill Moore, but that it was other people who informed her of that fact.

At the scene of the shooting, officers recovered three spent shell casings that were Winchester WMA 9mm cartridge casings. Officers assumed, but could not conclusively say, that the casings were fired from the same weapon.

Investigators were unable to identify a suspect in Moore's killing for several days because of the unwillingness of several witnesses to come forward about what happened at the club. However, investigators later gained enough information from cooperative witnesses and obtained an arrest warrant for Appellant, but they were unable to locate him. He was eventually arrested in Statesboro. After being transported back to Claxton, Appellant agreed to speak with investigators and was given warnings required by *Miranda*[4] but maintained that he did not kill Moore and that the two of them were "family."

At trial, a gang expert testified that based on Appellant's tattoos and photos and messages on his public Facebook profile, Appellant belonged to the Gangster Disciples, a criminal street and

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

prison gang. Particularly, one of Appellant's tattoos suggested that he was a "hitman" for the gang, meaning that he oversaw disciplining other members who failed to abide by the laws of the gang. The expert also testified that a gang member who is slapped would perceive such action as disrespectful and could create "extreme violence" by shooting the person who slapped them.

At trial, the medical examiner testified that she recovered three bullets from Moore's body and concluded that the gunshot wounds were the cause of death. The trajectory of the wounds indicated that the bullets entered Moore's body at a downward angle from left to right.

2.     In his first enumeration of error, Appellant contends that the evidence presented at trial was constitutionally insufficient to support his convictions. Appellant's entire argument on sufficiency is as follows:

> In reviewing the sufficiency of the evidence supporting a defendant's convictions, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

6

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Based on the evidence recited above, sufficient evidence does not support Byrd's convictions.

Supreme Court Rule 22 (1) provides that in all briefs filed in cases, except for death penalty matters, "[a]ny enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned." As presented in his brief, Appellant's argument regarding the constitutional sufficiency of the evidence supporting his convictions does not comport with this rule.

This Court's former Rule 22 provided that "[a]ny enumerated error not supported by argument *or* citation to authority in the brief shall be deemed abandoned." Supreme Court Rule 22 (2019) (emphasis supplied). The previous Rule 22's use of the disjunctive "or" suggested that litigants satisfied the rule if they either provided argument or citation to authority to support their enumeration of error. However, the rule was changed as of 2024 to include the conjunctive "and," demonstrating that to satisfy the rule, litigants

must do more than just make an argument or cite authority, but must now ensure that argument, citation to authority, and citation to the record are all present to avoid having an enumeration deemed abandoned. If it were not the case that litigants needed to satisfy all three requirements, "and" in the current version would be superfluous and the Court would have achieved nothing by amending the rule.[5]

With this understanding of the rule in mind, we conclude that Appellant's constitutional sufficiency enumeration is abandoned. Here, although Appellant cites *Jackson v. Virginia* and, presumably, incorporates by reference other factual assertions in his brief which contain record citations, he fails to make any specific argument explaining why the evidence presented at his bench trial was constitutionally insufficient to support his convictions. Recently, we have declined to address similarly made arguments in the context of

---

[5] Notwithstanding this rule, we recognize that there will be instances where it may be difficult to say whether a party's filing satisfies our understanding of Rule 22. As such, we note that we have discretion to make exceptions to our own rules and will do so when necessary.

constitutional sufficiency. See, e.g., *Scoggins v. State*, 317 Ga. 832, 837 n.6 (896 SE2d 476) (2023) ("Thus, instead of considering all conceivable sufficiency-related issues, we limit our consideration to only the argument that Scoggins *actually makes* in challenging the sufficiency of the evidence as to his malice murder conviction . . . .") (emphasis supplied); *Charles v. State*, 315 Ga. 651, 653-655 (884 SE2d 363) (2023) (concluding that the defendant failed to carry his burden on his constitutional sufficiency claim where he failed to articulate why the evidence was insufficient to support his convictions, "much less formulate[] an argument showing that the trial evidence failed to prove an essential element of any crime charged beyond a reasonable doubt"). See also *Sauder v. State*, 318 Ga. 791, 816 n.21 (901 SE2d 124) (2024) ("Sauder makes no specific argument and cites no authority to support any of these claims, so we do not address them."); *Sinkfield v. State*, 318 Ga. 531, 547 n.11 (899 SE2d 103) (2024) (deeming Appellant's argument abandoned for failure to make any "substantive argument"). Indeed, the way Appellant's brief presents the insufficiency issue does not provide

9

this Court with any meaningful opportunity to analyze why the record evidence does not support his convictions.

Moreover, with respect to the type of sufficiency-of-the-evidence claim at issue here, nearly every criminal offense has multiple elements and likely one or more defenses, and most criminal appeals are of multiple convictions. So, by merely reciting the evidence, pointing to those facts, and saying the evidence was not sufficient, an appellant does not give this Court enough information to ascertain what the basis for the insufficiency claim is. Under such circumstances, an appellate court would have to scour the entire record as it relates to each and every element of each and every conviction (and each and every defense) to determine what might not be supported by sufficient evidence. This is the type of expedition Rule 22 seeks to prevent. Instead, a defendant must articulate how and why the evidence was not sufficient, given the elements of and defenses presented with respect to each conviction being challenged on sufficiency grounds. Therefore, based on this understanding of Rule 22, Appellant's cursory sufficiency argument

is deemed abandoned.

3. Appellant next claims that he did not knowingly, intelligently, and voluntarily waive his Sixth Amendment right to a jury trial under the U.S. Constitution. He contends that the colloquy between him and the trial court did not meet the State's burden of proof beyond a reasonable doubt that Appellant waived his right to a jury trial. This argument fails.

"The constitutional right to a jury trial may be waived only if the State proves beyond a reasonable doubt that a defendant did so knowingly, voluntarily, and intelligently." *Agee v. State*, 311 Ga. 340, 343 (857 SE2d 642) (2021). See also *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (89 SCt 1709, 23 LE2d 274) (1969). Relevant for our purposes, the State may satisfy this burden by "showing on the record that the defendant was cognizant of the right being waived." Id. "Moreover, to ensure that a defendant has waived the right to a jury trial voluntarily, knowingly, and intelligently, the trial court should conduct a colloquy with the defendant personally." *Dugar v. State*, 314 Ga. 376, 382-383 (877 SE2d 213) (2022) (cleaned up). "We

review a trial court's acceptance of a waiver of a constitutional right for clear error." *Agee*, 311 Ga. at 344.

The record demonstrates that the trial court did not clearly err in finding that Appellant made a knowing, voluntary, and intelligent waiver of his right to a jury trial. Here, the trial court queried on the record whether Appellant understood that he had a constitutional right to a jury trial, that the right was his to exercise, and that only he could decide whether to waive it. The trial court further inquired into whether Appellant understood the pros and cons of waiving the right to a jury trial and whether he was influenced to waive the right by the State agreeing to withdraw its right to seek enhanced punishment under the recidivist statute. The trial court also highlighted that in a bench trial, the judge, not a jury, is the finder of fact. Finally, the trial court confirmed with Appellant that it was his desire to waive his right to a jury trial and elect to have a bench trial by having him and trial counsel sign a

waiver form. And Appellant signed the waiver form.[6] Throughout the colloquy, Appellant responded that he understood the right he was waiving, as well as the consequences of waiving that right, and wanted to precede with a bench trial. Therefore, the trial court did not clearly err in finding that Appellant knowingly, intelligently, and voluntarily waived his right to a jury trial. See *Dugar*, 314 Ga. at 382-383 (concluding that the defendant's waiver of her right to a jury trial was adequate where the trial judge questioned her on the record about her decision to waive and emphasized the importance of discussing the decision with counsel before waiving); *Agee*, 311

---

[6] The waiver form provides, in relevant part:

1. The Defendant has been fully and completely informed and advised of the right to have the above-styled case tried before a jury; and[] further acknowledges that this a valuable, constitutional right.
2. The State of Georgia, by and through the Office of the District Attorney, is prepared to try the Defendant's case before the next available jury impaneled for trial.
3. The Defendant does not wish this case to be tried before the next available jury but rather requests that the case be tried before the Judge of Superior Court who shall act as the finder of fact and law.
4. The Defendant personally, knowingly, voluntarily[,] and intelligently waives the right to a trial by jury.

13

Ga. at 343-345 (concluding that the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial where the trial court thoroughly questioned the defendant on whether he understood his constitutional right to a jury trial and was voluntarily choosing to waive that right, acknowledging the "pros and cons" of that decision); *Watson v. State*, 274 Ga. 689, 690-691 (558 SE2d 704) (2002) (concluding that defendant knowingly, voluntarily, and intelligently waived his right to a jury trial where he was asked personally on the record about proceeding with a bench trial, and defendant orally affirmed the waiver).

4. Finally, Appellant claims that he was denied the effective assistance of counsel with respect to his trial counsel's recommendation that he waive his right to a jury trial. To prevail on a claim of ineffective assistance of counsel, Appellant must prove both that the attorney's performance was professionally deficient and that the deficiency resulted in prejudice to his case. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must

show that his attorney's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. See id. at 687-690. To establish the required prejudice, Appellant must show that but for his attorney's unprofessional errors, there is a "reasonable probability" that the result of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "This burden, though not impossible to carry, is a heavy one." *Ellis v. State*, 292 Ga. 276, 283 (736 SE2d 412) (2013). See also *Kimmelman v. Morrison*, 477 U.S. 365, 382 (106 SCt 2574, 91 LE2d 305) (1986) ("As is obvious, *Strickland's* standard, although by no means insurmountable, is highly demanding."). Appellant has not carried his burden here. See *Isaac v. State*, 319 Ga. 25, 28 (901 SE2d 535) (2024) ("If [Appellant] fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part.").

Here, Appellant's sole articulated reason for claiming trial counsel was deficient is because trial counsel expressed some regret

about his decision to recommend Appellant waive his right to a jury trial. Particularly, at the motion for new trial hearing, trial counsel testified that he found one of the State's witnesses not credible and believed a jury would have reached a similar conclusion.

The reasonableness of trial counsel's strategic decision to advise a defendant to waive his right to a jury trial should be "examined from counsel's perspective at the time of trial and under the particular circumstances of the case." *Taylor v. State*, 312 Ga. 1, 15 (860 SE2d 470) (2021) (cleaned up). Here, the record demonstrates that trial counsel's advice to Appellant to waive his right to a jury trial was based on strategy and was reasonable.

At the motion for new trial hearing, trial counsel testified as follows. On the day of jury selection, Appellant, for the first time, expressed some desire about testifying at trial regarding how he feared for his life the night of the shooting.[7] Appellant explained to counsel that he was a member of the Gangster Disciples and that the gang had internal rules requiring a member to seek permission

---

[7] Appellant ultimately chose not to testify.

from someone with "fourth floor clearance" to kill another member of the gang. However, if the killing was preceded by a "random" or "spontaneous" fight, one would not have to seek such permission. Absent an unintentional fight, failure to seek permission to kill another member could subject one to discipline from others in the gang. Accordingly, Appellant allegedly found out that another member of the gang was planning to start a fight with him at the party so they could kill him, and therefore, avoid seeking permission from a higher-ranking member in the gang. Appellant also explained that he was a "hitman" in the gang, responsible for disciplining members who violated the rules of the gang.

Counsel advised Appellant that if he elected to have a jury trial and testified, and the jury heard about his gang affiliation and his role as a "hitman," the jury would view this as "character evidence." Specifically, counsel believed that the jury would only hear that they have a "hitman in town," disregarding any fear Appellant may have had when he shot Moore. There was also some concern that the "very white conservative jury" pool in Evans County would view a "black

17

man in a gang" in a negative light. Appellant shared the concerns about the jury and "didn't think that the [jurors] would give him a fair shot based on him being a gang member." Moreover, the State planned to present the testimony of a gang expert, further exacerbating the concern of the jury hearing about Appellant's gang affiliation. Accordingly, trial counsel recommended that Appellant waive his right to a jury trial because he believed a judge would not be swayed by Appellant's gang ties and focus primarily on the crimes at issue. This discussion between Appellant and trial counsel lasted approximately forty minutes.

The record shows that trial counsel's advice to Appellant to waive his right to a jury trial was not so patently unreasonable that no competent attorney would have given the same advice. Counsel's recommendation was primarily based on the concern that if Appellant testified about the reason he feared for his life the night of the shooting, the particular demographic of potential jurors would disregard that fear because Appellant was a gang member and a "hitman." See *Butler v. State*, 313 Ga. 675, 684 (872 SE2d 722) (2022)

(concluding that counsel was not deficient for advising the defendant to waive his right to a jury trial because the decision was based in part on counsel's concern for what impression the defendant's "overall demeanor" would leave on the jury). And notwithstanding whether Appellant testified, there was going to be gang evidence presented through the State's gang expert that the jury would hear. Moreover, Appellant's contention that trial counsel's deficiency is evidenced by his regret after the fact is without merit, as "trial counsel's decisions relating to strategy and tactics are not judged by hindsight." Id. (cleaned up). Accordingly, we cannot say that trial counsel's reasons for advising Appellant to waive his right to a jury trial were "objectively unreasonable considering all the circumstances and in the light of prevailing professional norms." *Dugar*, 314 Ga. at 385 (cleaned up). Therefore, this claim fails.

*Judgment affirmed. All the Justices concur, except McMillian, J., who concurs in judgment only as to Division 2.*