NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 28, 2025

S25A0058.  SIMS v. THE STATE.
S25A0150. GLOVER v. THE STATE.

BETHEL, Justice.

Colton Jerrod Sims and Monte Glover were convicted of malice murder and other crimes in connection with the shooting death of DeCoby Barlow and the contemporaneous aggravated assault of Landon Brown.[1] Both Sims and Glover challenge the sufficiency of

---

[1] The crimes occurred on December 8 to 9, 2018. In February 2019, a Henry County grand jury indicted Sims, Glover, and co-defendant Jalon Edwards for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), two counts of aggravated assault (Counts 5 and 6), and two counts of possession of a firearm during the commission of a felony (Counts 9 and 10). Sims was separately indicted for felony murder predicated on possession of a firearm by a convicted felon (Count 3) and felon-in-possession (Count 7); Glover was separately indicted for the same crimes (Counts 4 and 8). Sims, Glover, and Edwards were tried together before a jury in January and February 2020 and were found guilty on all counts. Edwards' case is not part of this appeal. The trial court sentenced Sims and Glover to serve life in prison on Count 1, twenty years concurrent on Count 6, five years consecutive on their respective felon-in-possession counts, and five years consecutive on Count 9. The remaining counts merged or were vacated by operation of law.

the evidence supporting their convictions. Additionally, Sims raises four claims of trial court error, and both Sims and Glover assert that their trial counsel was constitutionally ineffective in various respects. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the evening of December 8, 2018, Sims and his friend Colby Toles got into a dispute with Glover and co-defendant Jalon Edwards at a nightclub. During the ensuing scuffle between Toles and Edwards, Edwards brandished a firearm, and the dispute moved outside. The group and several patrons, including Barlow, likewise exited the building.

A witness, Chris Jackson, testified that he saw Sims, whom he knew, fire several shots in the air near the club at the corner of the building and that he thought Sims was "taking up" for Toles.

---

Sims and Glover separately filed timely motions for new trial, which were amended. Following evidentiary hearings, the trial court entered orders denying Sims' and Glover's motions, as amended, on November 22, 2023, and July 28, 2023, respectively. Sims and Glover then filed timely notices of appeal, and their cases were docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

2

Jackson then heard shots being fired by another person.

Security guards outside the club observed Glover retrieve a firearm from his vehicle and then heard shots ring out from different directions outside the club. Brown, one of the security guards, saw several people with firearms, heard shots fired toward him and the other security guards at the front of the club, and heard shots returned between the front of the club and the adjacent building. While fleeing the barrage of shots, Barlow was struck in the crossfire, sustaining a fatal gunshot wound to his back.

During the investigation into the crimes, ballistics evidence confirmed that shots were fired between the two locations. Police ultimately recovered a Glock handgun belonging to Edwards, which was determined to have fired the bullet that killed Barlow. A detective obtained surveillance video showing the crimes, which was played for the jury at trial, and which the detective testified showed Edwards and Glover firing weapons. The jury also heard testimony that one of the security guards, who was present during the crimes and who knew Glover, reviewed the security footage of the incident

3

and observed Glover fire his weapon.

2. Sims and Glover first challenge the sufficiency of the evidence supporting their convictions as a matter of constitutional due process. When reviewing the sufficiency of the evidence as a matter of constitutional due process, the proper standard of review is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State,* 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). "The jury's verdicts will be upheld as long as some competent evidence, even if contradicted, supports each fact necessary to make out the State's case." *Garcia-Solis v. State,* 320 Ga. 754, 760 (1) (911 SE2d 673) (2025) (citation omitted). With these principles in mind, we address the appellants' contentions in turn.

(a) Sims argues that the evidence against him was insufficient

4

to support his convictions for malice murder, aggravated assault, and felon-in-possession because, he says, the evidence did not support a finding that he was a party to the crimes.[2] To that end, he points to the "undisputed" fact that he did not fire the fatal shot and evidence that he was unacquainted with his co-defendants. Sims further complains that only one witness testified that he fired a weapon, that the State failed to produce physical or video evidence connecting him to the crime, and that the evidence against him was circumstantial and inconsistent. We are not persuaded.

Sims was charged individually and as a party to the crimes. OCGA § 16-2-20 (a) provides that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." "Conviction as a party to a crime requires proof of a common criminal intent, which the jury

---

[2] Though Sims purports to challenge the sufficiency of the evidence on all the charges of which he was found guilty, we confine our analysis to those crimes for which Sims was actually sentenced. See *Milton v. State*, 318 Ga. 737, 742 (2) n.5 (900 SE2d 590) (2024) (because appellant was not sentenced for charges that were vacated or merged, sufficiency claims related to those crimes were moot).

may infer from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes." *Clark v. State*, 315 Ga. 423, 427 (2) (883 SE2d 317) (2023). We conclude that there was sufficient evidence from which the jury could find that Sims was guilty of the crimes of which he was convicted, at least as a party to the crimes.

As an initial matter, Sims' complaints about the circumstantial nature of the evidence[3] and inconsistencies in the evidence do not mean that the evidence was insufficient as a matter of constitutional due process. See *Anglin v. State*, 312 Ga. 503, 506-507 (1), 863 SE2d

---

[3] In his appellate brief, Sims makes no specific argument that the evidence at trial was insufficient as a matter of Georgia statutory law. To the extent Sims' reference to the circumstantial nature of the evidence against him is intended to raise a sufficiency challenge under Georgia statutory law, see OCGA § 24-14-6 ("[To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."), OCGA § 24-14-6 is inapplicable here because the State also presented direct evidence of Sims' guilt in the form of eyewitness testimony. See *Bradley v. State*, 318 Ga. 142, 144 (1) (897 SE2d 428) (2024) ("[I]f there is any direct evidence presented by the State, the circumstantial evidence statute does not apply in a sufficiency analysis." (citation and punctuation omitted)); *Gittens v. State*, 307 Ga. 841, 843 (1) n.2 (838 SE2d 888) (2020) ("Eyewitness testimony based on the witness's firsthand observations of the crime is direct, not circumstantial, evidence.").

148 (2021) ("The fact that the evidence of guilt was circumstantial does not render it insufficient." (citation and punctuation omitted)); *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

Here, eyewitness testimony established that the crimes arose from Toles and Sims' dispute with Glover and Edwards and that, during the resulting exchange of gunfire between the men, Barlow sustained a fatal gunshot wound and shots were fired toward Brown. An eyewitness who knew Sims testified that he saw Sims fire several shots in the air near the club and that he thought Sims was "taking up" for Toles. We have held that participating in a gunfight in a crowded area is enough to support a conviction for malice murder as a party to the crime. See *Blackwell v. State*, 302 Ga. 820, 821 (1) (809 SE2d 727) (2018); *Coe v. State*, 293 Ga. 233, 235 (1) (748 SE2d 824) (2013) (evidence that defendant and intended victim engaged in gunfight that ultimately resulted in death of bystander was

7

sufficient to support conviction for malice murder). And regardless of who inflicted the fatal shot, evidence that Sims armed himself with and subsequently discharged his weapon during his dispute with Glover and Edwards authorized a rational jury to infer that Sims "shared a common criminal intent with [his co-defendants] to engage in a gunfight in the presence of innocent bystanders." *Blackwell*, 302 Ga. at 821 (1) (where appellant participated in a gunfight in a crowded parking lot, a rational trier of fact could find he was a party to malice murder even though he did not fire the fatal shot). See also *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013) (evidence sufficient for aggravated assault conviction where rational jury could have inferred that defendant and coconspirator, who discharged a firearm, striking an innocent bystander, shared a common intent to engage in a gunfight in the presence of innocent bystanders).

That only one eyewitness testified to seeing Sims possess and fire a weapon is of no moment. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Nor

was the State required to produce evidence besides the eyewitness testimony showing that Sims possessed and fired a weapon — whether physical, video, or otherwise — "because the testimony of a single witness is generally sufficient to establish a fact, and the lack of corroboration with physical evidence only goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." *Denson v. State*, 307 Ga. 545, 547 (1) (837 SE2d 261) (2019) (citation and punctuation omitted). See also *Grant v. State*, 319 Ga. 490, 494 (2) (a) (904 SE2d 338) (2024) ("[T]he fact that the State did not produce certain types of evidence does not mean that the evidence was insufficient."). As such, the evidence presented at trial was sufficient to support Sims' convictions as a party to the crime as a matter of constitutional due process, and Sims' sufficiency claim fails.

(b) Glover, for his part, challenges the sufficiency of the evidence to support his conviction for malice murder[4] by arguing

---

[4] Because Glover's argument regarding the sufficiency of the evidence focuses exclusively on his murder conviction, we have limited our analysis

9

that the "only" evidence connecting him to the shooting was the testimony of an investigating detective who identified Glover as one of the shooters shown on the surveillance video, and he complains that the detective's testimony should have been excluded.[5] This argument is unavailing.

Whether the detective's testimony was properly admitted is irrelevant to a sufficiency analysis. As we have explained, "[w]hen we consider the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), we consider all of the evidence presented at trial, without regard to whether some of that evidence might have been improperly admitted." *Welbon v. State*, 301 Ga. 106, 107 (1) n.2 (799 SE2d 793) (2017). See also *McDaniel v. Brown*, 558 U. S. 120, 131 (III) (130 SCt 665, 175 LE2d 582) (2010) (When assessing whether evidence adduced at trial was sufficient to support a conviction, "a reviewing

accordingly. See *Morrell v. State*, 318 Ga. 244, 246 (1) n.3 (897 SE2d 841) (2024).

[5] Glover does not separately enumerate as error the admission of this testimony or provide authority in support of his conclusory assertion that it should have been excluded.

court must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." (citation and punctuation omitted)). Moreover, contrary to Glover's assertion, the detective's testimony was not the only evidence of his guilt. As noted above, two security guards who knew Glover testified that they saw him run to a car in front of the club and retrieve a gun, and one of the guards testified that Glover was one of the shooters visible in security footage of the incident. Though Glover attempts to discount this evidence by casting doubt on the credibility of the guards and the weight owed their testimony, those were issues for the jury to resolve, and "[t]he jury's resolution of these issues adversely to the defendant does not render the evidence insufficient." *Tyler v. State*, 311 Ga. 727, 730 (2) (859 SE2d 73) (2021). Instead, viewed in the appropriate light, we conclude that the evidence was sufficient as a matter of constitutional due process for a rational trier of fact to find Glover guilty of malice murder. See *Coe*, 293 Ga. at 235 (1).

3. Sims raises four claims of trial court error. As explained

below, we conclude that Sims waived appellate review of one claim by acquiescence and abandoned two other claims for failure to cite any authority or engage in legal analysis. Sims' third claim of error fails on the merits.

(a) Sims first argues that the trial court erred by refusing a juror's request to be excused from jury service based on concern for her and her family's safety or, alternatively, by denying the State's request to instruct the juror not to discuss her concerns with other jurors. But in the trial court, Sims did not object to the trial court's refusal either to excuse the juror or to instruct her not to speak to other jurors about her concerns, as requested by the State. In fact, Sims expressly indicated that he did not believe it was necessary to excuse the juror. It is axiomatic that "[n]o matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal." *Compton v. State*, 281 Ga. 45, 46 (2) (635 SE2d 766) (2006).

As such, Sims has waived appellate review of this claim.[6]

(b) In two separate additional enumerations of error, Sims argues that the trial court erred by overruling his objections to testimony by an investigating detective. However, Sims has failed to cite any authority or engage in legal analysis in support of those claims. Supreme Court Rule 22 (1) states that in all briefs filed in cases other than death-penalty matters, "[a]ny enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned." And as we recently explained, to avoid having an enumeration of error deemed abandoned, litigants must "ensure that argument, citation to authority, *and* citation to the record are all present" with respect to each and every error enumerated in their briefs. *Byrd v. State*, ___ Ga. ___ (2) (913 SE2d 667) (2025). By omitting citation of authority and legal analysis, Sims has failed to comply with Rule 22, and we conclude that he has abandoned these

---

[6] Further, plain error review does not apply to this claim of error. See *Williams v. State*, 291 Ga. 501, 505 (2) (732 SE2d 47) (2012).

13

claims of error. See id.

(c) In the sole claim of trial court error preserved for ordinary appellate review, Sims argues that the trial court erred by sustaining the State's hearsay objection during his cross-examination of a detective, specifically, when Sims asked the detective if he had learned that another person, whom Sims identified by name, was investigated as a possible shooter. But even assuming that the trial court erred by sustaining the objection, we conclude that any error was harmless, particularly in light of Sims' failure to show, or even argue, how the exclusion of this testimony harmed him. See *Kitchens v. State*, 310 Ga. 698, 702 (2) (854 SE2d 518) (2021) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.").

Here, the primary import of the excluded testimony was to show that the investigation into the crimes was flawed and that police failed to consider other viable suspects. But the jury heard ample testimony supporting that aspect of Sims' defense theory.

14

Indeed, the record shows that Sims was not foreclosed from pursuing a line of inquiry about other potential perpetrators and, in fact, elicited additional testimony from the detective about another possible shooter who was "not seated at the defense table." Sims also elicited testimony without objection regarding the investigation into a different potential shooter, whom he also identified by name. In light of the specific evidence presented in support of Sims' theory, testimony identifying a specific person as an alternative suspect "was essentially cumulative, and it is highly unlikely that such additional evidence would have had any effect on the verdict." *Cook v. State*, 312 Ga. 299, 302 (2) (862 SE2d 510) (2021) (any error in excluding testimony about acts of violence committed by victim against third parties that was intended to show appellant had reason to fear victim was harmless because other evidence established that victim had reputation for violence, was known to carry a gun, and previously assaulted appellant and, thus, excluded testimony was "essentially cumulative"); *Walker v. State*, 306 Ga. 44, 47 (2) (829 SE2d 121) (2019) (any error in excluding testimony

of appellant's sister that appellant said victim tried to kill him was cumulative and harmless because appellant testified that he acted in self-defense and responding officer testified that appellant claimed victim had shot him). As such, this claim fails.

4. Finally, Sims and Glover argue that trial counsel rendered ineffective assistance in numerous ways. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficiency, he must show that his lawyer "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms," which is "no easy showing, as the law recognizes a strong presumption that counsel performed reasonably." *Davis v. State*, 299 Ga. 180, 182-183 (2) (787 SE2d 221) (2016) (citation and punctuation omitted). To show prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been

different." *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). If a defendant fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part. See *Washington*, 313 Ga. at 773 (3).

(a) Sims first contends that his counsel performed deficiently by failing to object when Jackson testified that he thought Sims "was taking up" for Toles, asserting that Jackson's testimony was based on speculation. We disagree.

Under OCGA § 24-6-602, a witness generally cannot testify about a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge" of the matter. That evidence "may, but need not, consist of the witness's own testimony." Under that rule, "witnesses may testify about events they personally observed." *Draughn v. State*, 311 Ga. 378, 385 (4) (858 SE2d 8) (2021). And a lay witness may testify in the form of opinions which are "[r]ationally based on the perception of the

17

witness." OCGA § 24-7-701 (a) (1).

Here, Jackson's testimony that he saw Sims shooting and believed that Sims was "taking up" for Toles was based on his personal observation of the two at the club prior to the shooting, and his opinion that Sims was "taking up" for Toles was rationally based on his observations of the group and the altercation inside the club. His testimony in this regard was thus properly admitted, and any objection would have been meritless. See *Favors v. State*, 296 Ga. 842, 845-846 (3) (770 SE2d 855) (2015). And because trial counsel does not perform deficiently by failing to make a meritless objection, this enumeration fails. See *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010) (failure to make a meritless objection cannot be evidence of ineffective assistance).

(b) Sims next complains that trial counsel was deficient for failing to question a detective further about the lack of investigation into the third shooter and more thoroughly present that theory of defense to the jury. But "decisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely

constitute ineffective assistance of counsel." *Pritchett v. State*, 314 Ga. 767, 786 (3) (b) (879 SE2d 436) (2022). The record shows that counsel questioned the detective about a possible third shooter and argued to the jury during closing that investigators failed to adequately pursue and investigate this theory of the crime. Sims' vague assertions that counsel should have asked more or different questions about a third shooter is insufficient to carry his burden of showing that counsel's cross-examination of the detective fell outside the "wide range of reasonable professional conduct." Id.; *Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020) ("Decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (citation and punctuation omitted)). For this reason, this claim fails.

(c) Sims also argues that trial counsel should have moved to excuse the juror who expressed concern for her and her family's safety, or, at a minimum, requested further inquiry into that juror's letter to the court. "[J]uror selection is a matter of trial tactics and

19

strategy," and "a decision implicating trial tactics and strategy can serve as the basis for an ineffectiveness claim only if it is so patently unreasonable that no competent attorney would have made such a decision." *Capps v. State*, 300 Ga. 6, 12-13 (2) (e) (792 SE2d 665) (2016). At the motion for new trial hearing, counsel testified that he did not think the alternate jurors would be favorable to the defense and that he was "more afraid of the alternate" than he was of the juror at issue here. Counsel also noted that, despite her safety concerns, the juror indicated that she could remain impartial and, for that reason, he did not think a motion to excuse her from service would succeed. Though counsel expressed some regret at the motion for new trial hearing for his decision not to pursue the matter further, "trial counsel's decisions relating to strategy and tactics are not judged by hindsight." *Byrd*, ___ Ga. at. ___ (4) (citation and punctuation omitted). Sims has not established that, under the facts of this case, counsel's assessment was so patently unreasonable that no competent attorney would have done the same, and his claim of ineffective assistance fails. See *Clark v. State*, 315 Ga. 1, 4-5 (2) (a)

(880 SE2d 201) (2022) (trial counsel did not perform deficiently by failing to further address alleged juror misconduct where reasonable efforts were made to address the issue).

(d) Sims argues that trial counsel should not have withdrawn his request for jury instructions on voluntary manslaughter and involuntary manslaughter. This claim, like the others, fails.

"A request to charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence." *Hudson v. State*, 308 Ga. 443, 445 (2) (a) (841 SE2d 696) (2020) (citation and punctuation omitted). And "[t]o justify an instruction for voluntary manslaughter, Appellant must show that the killing occurred 'solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.'" *Hayes v. State*, 320 Ga. 505, 520 (6) (910 SE2d 198) (2024) (citing OCGA § 16-5-2 (a)). At the motion for new trial hearing, trial counsel explained that he withdrew his request for the instruction based on his determination that the voluntary manslaughter charge was not adjusted to the

21

facts of the case, and the facts of this case appear to support that conclusion. See *Annunziata v. State*, 317 Ga. 175, 179 (891 SE2d 814) (2023) ("Even a physical confrontation between two individuals does not necessarily provide the slight evidence necessary to require a voluntary manslaughter charge."). Indeed, Sims points to no evidence in the record supporting his assertion that such a charge was warranted under the facts of this case. Sims therefore has not shown that trial counsel's assessment that the evidence did not support a voluntary manslaughter instruction was unreasonable and, as such, has not shown that counsel performed deficiently by withdrawing his request for the instruction. See *Vann v. State*, 311 Ga. 301, 304-305 (2) (857 SE2d 677) (2021) (no deficient performance where "[a] competent attorney could have assessed that a voluntary manslaughter defense was either unavailable or weak").

Trial counsel likewise did not perform deficiently by withdrawing the instruction on involuntary manslaughter. Under OCGA § 16-5-3 (a), "[a] person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes

the death of another human being without any intention to do so by the commission of an unlawful act *other than a felony*." (Emphasis supplied.) To warrant a charge on involuntary manslaughter, "the unlawful act underlying the unintentional death of the victim must be an act other than a felony." *Hood v. State*, 303 Ga. 420, 428 (3) (811 SE2d 392) (2018). Under the facts of this case, Sims' acts of possessing and discharging a firearm in the presence of innocent bystanders constituted felonies, including aggravated assault and possession of a firearm by a convicted felon, see OCGA §§ 16-5-21 (b) and 16-11-131 (b), and Sims makes no effort to argue otherwise. Accordingly, an involuntary manslaughter instruction was not adjusted to the evidence in this case, and counsel did not perform deficiently by withdrawing his request for such an instruction. See *Johnson v. State*, 295 Ga. 615, 619-620 (3) (b) (759 SE2d 837) (2014); *Smith v. State*, 315 Ga. 357, 364 (3) (882 SE2d 289) (2022).

(e) Lastly, Glover argues that trial counsel performed

23

deficiently by failing to meet or speak with him before trial.[7] The record belies this contention.

At the hearing on Glover's motion for new trial, trial counsel testified that he spoke with Glover about possible defenses and witnesses before trial and met with him at the jail at least once. Though Glover offered his own testimony to the contrary, the trial court, in rejecting this claim below, explicitly credited counsel's testimony over Glover's. "The trial court was authorized to credit the testimony of [appellant's] counsel, and its factual findings and credibility determinations will be accepted unless clearly erroneous." *Jones v. State*, 287 Ga. 270, 272 (695 SE2d 271) (2010). Because neither Glover nor our own review of the record reveals any such error, Glover has failed to meet his burden of demonstrating

---

[7] In connection with this enumeration, Glover complains that trial counsel did not sit near him during the trial but instead sat somewhere he could see and hear better, but the record shows that Glover did not raise this argument in his amended motion for new trial and the trial court did not rule on it. As such, this claim is waived. See *King v. State*, 304 Ga. 349 (2) (2018) ("Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived." (citation and punctuation omitted)).

that counsel's performance was deficient, and this claim fails.[8] See

id.

*Judgments affirmed. Peterson, CJ, Warren, PJ, and Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*

---

[8] Because Glover has failed to show any deficiency, we need not address his argument that new witness testimony presented at the hearing on the motion for new trial established prejudice. See *Jones*, 287 Ga. at 272. And Glover has not argued that the failure to call this witness at trial was otherwise deficient performance.