## S96A0321. EVANS et al. v. LIPSCOMB.
(470 SE2d 641)

HINES, Justice.

This is an equitable action seeking to reform a 1986 agreement establishing a boundary line on property owned for thirty-seven years

by two tenants in common, both of whom are now deceased. We granted Melo Evans' application for interlocutory appeal to determine whether the superior court erred in holding that Bob Lipscomb's action for reformation was not barred, as a matter of law, by the applicable statute of limitation. We reverse.

On October 8, 1949, Glenn Lipscomb and Herbert Childers purchased a parcel of land in Cherokee County, known as the Cagel Farm, as tenants in common.[1] Over the years, they sold approximately 50 acres and in 1986, Lipscomb and Childers executed a "Boundary Line Agreement," dividing the remaining property between them as follows:

> The undersigned parties hereto desire to enter into an agreement definitely locating and establishing the dividing line between their respective properties, [which shall be the "Old Logging Road" which runs through the property].

> Therefore, [for consideration], it is agreed that [the "Old Logging Road"] shall constitute the dividing line between the properties of the parties and each party hereby grants, bargains and conveys to the other such portions of their property as is required to establish said line as a common boundary between the properties.

The 1986 agreement, partitioning the Cagel property, failed to specify which co-tenant owned which side of the boundary line. Therefore, on July 21, 1987, Lipscomb and Childers each executed a quitclaim deed to the other, with Lipscomb receiving the western parcel of the partitioned property and Childers receiving the eastern parcel.[2] Realizing that the 1987 quitclaim deeds conveyed incorrect parcels, Lipscomb and Childers executed corrective quitclaim deeds on March 22, 1991, with Lipscomb taking the eastern part and Childers taking the western portion. Both sets of quitclaim deeds purported to convey 50 acres, more or less.

On January 13, 1992, Lipscomb received a plat of a survey he had commissioned of the eastern parcel, showing that his tract contained 19.09 acres, after his conveyance of two acres to a third party. On April 16, 1992, Childers received a plat of a survey he had commissioned of the western parcel, showing that his tract contained 46.25 acres, after his conveyance of five acres to a third party. Childers con-

---

[1] Lipscomb and Childers believed the Cagel Farm consisted of 150 acres when they purchased it.

[2] Each of the 1987 quitclaim deeds contained the following paragraph: "The parties herein have previously executed a boundary line agreement defining the location of the road, dated July 2, 1986."

veyed the western parcel to appellant Evans by warranty deed on April 22, 1992.

After learning of the disparity in the division of the two parcels, Lipscomb and his son, Bob, approached Childers and Evans separately in April 1993 regarding an amicable redivision of the land. Childers and Evans both refused to discuss the possibility of redividing the Cagel property.

Bob Lipscomb became the executor of his father's estate on August 16, 1993. As executor, he filed this action on December 16, 1994, seeking equitable reformation of the boundary line agreement and quitclaim deeds between his father and Childers to reflect the parties' intention that an equal division of the Cagel property result. Evans filed a motion for summary judgment asserting, inter alia, that Bob Lipscomb's action for reformation was barred by the applicable seven-year limitation period. The superior court denied Evans' motion.

1. "[A]n action to reform a written instrument can be brought at any time within seven years from the time the cause of action accrues, if not barred by laches." *Whittle v. Nottingham*, 164 Ga. 155, 161 (3) (138 SE 62) (1927). In order to find when the cause of action accrued, we must determine which of the "written instruments" is to be reformed. Lipscomb asserts that the 1991 corrective deeds are the written instruments that must be reformed because they are the only instruments that provide Childers and his father with legal or colorable title to their respective portion of the Cagel property. According to this argument, the cause of action in this case did not accrue until March 22, 1991. However, we do not agree.

In *Adams v. Spivey*, 94 Ga. 676 (20 SE 422) (1894), this Court held that "[w]here tenants in common agree by parol upon a partition, defining in the agreement the boundaries of the part assigned to each in severalty, and each enters into possession, thus executing the agreement, the partition clothes each with a perfect equity and is thus the equivalent of legal title." To the same effect, see also *Reed v. Mathewson*, 146 Ga. 819, 821 (92 SE 632) (1917); *Williams v. J. P. Williams Co.*, 122 Ga. 178, 182 (3-5) (50 SE 52) (1905). Additionally, "[s]uch settlements are highly favored by the courts and, where the rights of third parties have not intervened, will generally be upheld." *Young v. Bozeman*, 229 Ga. 195, 200 (1) (190 SE2d 523) (1972). Thus, when Glenn Lipscomb and Childers agreed to partition the property using the "Old Logging Road," which runs north and south, as the dividing line, and Childers moved onto the western parcel and Glenn Lipscomb the eastern parcel, thereby executing the agreement, each was clothed with perfect equity to the parcel received by him. Therefore, the action seeking to reform the partitioning of the Cagel property between Childers and Glenn Lipscomb, due to a mutual mistake,

accrued when the boundary line agreement was executed in July 1986.

2. The other issue to be resolved is whether the seven-year limitation period was tolled due to mistake or fraud. For the following reasons, we find that the limitation period was not tolled.

Bob Lipscomb asserts that the statute of limitation should not begin to run until his father discovered the mistake in April 1993, or, at any rate, not until his father should have discovered the mistake through reasonable diligence.[3] Furthermore, he contends that the statute of limitation should be tolled due to fraud from April 1992, when Childers allegedly knew of the unequal division, until April 1993, when his father discovered the discrepancy. These contentions fail.

As a general rule, the statute of limitation does not commence to run against an equitable action for reformation of a written instrument based on mutual mistake or fraud until the mistake or fraud has been, or by the exercise of reasonable diligence should have been, discovered. See 54 CJS 260, Limitations of Actions, § 197; 106 ALR 1338, Limitations of Actions, § 131; 54 AmJur2d 465, Mistake, Accident, or Surprise, § 24. However, when a defendant pleads laches or the statute of limitation, as in this case, it is incumbent upon the party applying for the relief to show what impediments stopped him or her from discovering the mistake or fraud through reasonable diligence. *Parker v. Fisher*, 207 Ga. 3, 6 (59 SE2d 715) (1950); *Rigdon v. Barfield*, 194 Ga. 77, 82 (1) (20 SE2d 587) (1942); *Aken v. Bullard*, 134 Ga. 665, 667 (68 SE 482) (1910).

The circumstances of this case show, as a matter of law, a lack of due diligence. Glenn Lipscomb did not act with reasonable diligence to verify that he received an equal amount of land under the partitioning agreement. The record shows no explanation for why he failed to conduct a survey of the Cagel property before or after the partition agreement was executed in 1986. Additionally, a visual inspection of the Cagel property should have made him aware of the disparity in the two parcels and that the eastern tract did not consist of fifty acres. A plaintiff cannot "sit quietly by for a length of time exceeding that named in the statute of limitations, and avoid its operation and save his cause of action by the mere allegation that he made the discovery" only recently. *Rigdon*, supra at 82.

Moreover, there is no evidence that Glenn Lipscomb was prevented from knowing that there was a cause of action against Childers or Evans because the 1986 boundary line agreement did not divide the Cagel property equally. Irrespective of whether Childers knew in

---

[3] Bob Lipscomb argues that the earliest point at which his father should have known of the mistake was January 1992 when his father received the survey showing that the eastern parcel consisted of only 19.09 acres.

April 1992 that he received more land than Glenn Lipscomb, under the partitioning agreement, fraud that should be discovered through reasonable diligence is not a good response to the statute of limitation. *Slade v. Barber*, 200 Ga. 405, 410 (2) (37 SE2d 143) (1946).[4]

The present action is time-barred and the superior court erred in finding otherwise.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 20, 1996 —
RECONSIDERATION DENIED JUNE 14, 1996.

*J. Michael Treadaway*, for appellants.
*Donald J. Snell*, for appellee.

---

[4] Glenn Lipscomb was already aware in April 1992 that his parcel consisted of only 19.09 acres.