**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 2, 2025**

# In the Court of Appeals of Georgia

A25A0152. JPMORGAN CHASE BANK, N. A. v. WHITAKER et. al.

A25A0153. IRACI v. JPMORGAN CHASE BANK, N. A.

BARNES, Presiding Judge.

JPMorgan Chase Bank, N. A. ("Bank"), as successor in interest of Washington Mutual, N. A. ("WaMu"), sued the administrator of the estate of N. R. Hines and several of Hines's family members,[1] seeking equitable reformation of a security deed to correct an alleged mistake in the legal description of the collateral. The defendants moved for summary judgment on the ground that the seven-year statute of limitation applicable to an equitable reformation claim barred the Bank's suit. The trial court

---

[1] The administrator of Hines's estate was William E. Whitaker. The family members were Hines's wife (Regina Hines), daughter (Beryl Hines-Iraci), and son-in-law (Gary Iraci).

agreed with the defendants and granted their motion for summary judgment. The Bank filed a notice of appeal from the trial court's summary judgment order, but we dismissed the appeal as untimely. Following dismissal of the appeal, the Bank moved for the trial court to set aside and re-enter the summary judgment order on the ground that the court had not provided the Bank with timely notice of that order. Concluding that proper notice had not been provided, the trial court set aside and re-entered its summary judgment order, resulting in these companion appeals.

In Case No. A25A0152, the Bank contends that the trial court erred in granting summary judgment to the defendants based on the statute of limitation because genuine issues of material fact existed as to when the alleged mistake in the legal description of the security deed could have been discovered through the exercise of reasonable diligence. In Case No. A25A0153, the defendants contend that the trial court erred in setting aside and re-entering its summary judgment order because the court was precluded from doing so under the law-of-the-case doctrine as set out in OCGA § 9-11-60 (h). For the reasons discussed below, we affirm the judgments in both appeals.

Viewed in the light most favorable to the Bank as the nonmoving party,[2] the evidence showed the following.[3] In 2005, Hines owned two adjacent tracts of land in Cherokee County, Georgia, which are pertinent to this lawsuit: a larger tract consisting of 64.24 acres ("Large Tract"), and a smaller tract consisting of .626 acres ("Small Tract"). Hines and his wife's residence was on the Large Tract; the Small Tract was unimproved land.

On March 25, 2005, WaMu extended to Hines an equity line of credit in the amount of $200,000. Prior to the extension of credit, an appraisal report was prepared for Hines's property that was intended to serve as collateral for the loan. The appraisal report, dated March 15, 2005, described the property as a "single family residence," listed the property as "owner occupied," valued the property at $900,000, specified a land acreage of over 60 acres, and listed the land lot numbers and districts for the

[2] See *Wilson v. Obstetrics & Gynecology of Atlanta*, 304 Ga. App. 300, 301 (696 SE2d 339) (2010).

[3] In addressing these two companion appeals, we have taken into account the record from both appeals and from the prior appeal. See *Sentinel Offender Svcs. v. Glover*, 296 Ga. 315, 321, n. 13 (766 SE2d 456) (2014) (noting that appellate courts may take judicial notice of the records in companion appeals); *Trend Star Continental v. Branham*, 220 Ga. App. 781, 783 (2) (469 SE2d 750) (1996) (holding that this Court may take judicial notice of prior appeals before it). The prior appeal was docketed in this Court as Case No. A24A1259.

property. Tax and insurance documents that Hines submitted to WaMu as part of the loan origination process, as well as the closing checklist for the loan, indicated that the collateral was owner occupied. However, the security deed that was executed and recorded for the loan included only the legal description of the Small Tract as collateral.

Hines obtained two modifications of his loan with WaMu in 2007. As part of the modification process, WaMu obtained a second appraisal report. The second appraisal report, dated May 26, 2007, again described the property as a "single family residence," checked off that the property was owner occupied, valued the property at $1,050,000, specified a land acreage of over 60 acres, and listed the land lot numbers and districts for the property. On June 7, 2007, WaMu agreed to modify the loan to increase the loan amount to $300,000. The security deed for the modified loan again contained the legal description only of the Small Tract. A few months later, on August 27, 2007, WaMu and Hines entered into an agreement to refinance the loan under which the loan amount was increased to $490,000. As with the prior two security deeds, the security deed for the refinanced loan ("Third Security Deed")

included only the legal description of the Small Tract as collateral. The Third Security Deed subsequently was assigned to JP Morgan.

On December 27, 2012, Hines conveyed by quitclaim deed the Large Tract to his daughter, reserving for himself and his wife a life estate in the Large Tract until both were deceased. On July 13, 2017, Hines's daughter conveyed by quitclaim deed her interest in the Large Tract to herself and her husband as joint tenants with right of survivorship.

On May 31, 2018, the Bank filed the present action for equitable reformation of the Third Security Deed against Hines, his daughter, and his son-in-law. Hines's wife was later added as a defendant, and the administrator of Hines's estate was substituted as a defendant after Hines died during the litigation. In its complaint, as amended, the Bank alleged that as a result of mutual mistake, the Third Security Deed contained the legal description of only the unimproved Small Tract as collateral. The Bank requested that the Third Security Deed be equitably reformed to include the legal description of the Large Tract, which contained Hines's residence.

In December 2021, the defendants moved for summary judgment, contending, among other things, that the Bank's suit was barred by the seven-year statute of

limitation for equitable reformation claims. The defendants argued that the Bank (through WaMu as its predecessor in interest) should have discovered the alleged mistake in the legal description of the collateral by no later than August 27, 2007, when the refinanced loan was closed and the Third Security Deed was executed. The Bank opposed the motion for summary judgment, contending that there were genuine issues of material fact as to when the mistake in the legal description of the Third Security Deed should have been discovered through the exercise of reasonable diligence.

The trial court granted the defendants' motion for summary judgment. The trial court concluded, among other things, that the alleged mistake in the legal description of the Third Security Deed should have been discovered through the exercise of reasonable diligence by no later than August 27, 2007, and that, as a result, the Bank's equitable reformation action, which was not filed until May 2018, was barred by the seven-year limitation period.

The Bank filed an untimely notice of appeal from the summary judgment order, leading this Court to dismiss the appeal. Our dismissal order stated in relevant part:

> A notice of appeal must be filed within 30 days of entry of the judgment or trial court order sought to be appealed. OCGA § 5-6-38 (a).

"The proper and timely filing of a notice of appeal is an absolute requirement to confer jurisdiction upon an appellate court." *Perlman v. Perlman*, 318 Ga. App. 731, 739 (4) (734 SE2d 560) (2012) (punctuation omitted). Here, the Bank's notice of appeal was untimely, as it was filed four months after entry of the trial court's order. Accordingly, we lack jurisdiction to consider this appeal. For that reason, the [defendants'] motion to dismiss is GRANTED, and this appeal is hereby DISMISSED.

To the extent that the trial court did not provide the Bank with timely notice of its [summary judgment] order, the Bank's remedy is to petition the trial court to vacate and re-enter the order as a means of correcting the problem. *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 148-149 (1) (269 SE2d 426) (1980), disapproved in part on other grounds by *Wright v. Young*, 297 Ga. 683, 684 n. 3 (777 SE2d 475) (2015).

Following the dismissal of the appeal, the Bank filed a motion requesting that the trial court set aside and re-enter its summary judgment order pursuant to OCGA § 9-11-60 (g)[4] on the ground that the court had not provided the Bank with timely notice of that order. The defendants opposed the motion, asserting that the dismissal

_____

[4] OCGA § 9-11-60 (g) provides:
    *Clerical mistakes.* Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

of the Bank's prior appeal of the summary judgment order constituted binding law of the case under OCGA § 9-11-60 (h)[5] such that the trial court was precluded from considering the Bank's request.

The trial court granted the Bank's motion to set aside and re-enter its summary judgment order. In so ruling, the trial court found that based on its review of the records from the court's e-filing system, "there [was] evidence that a computer error caused a failure to send the automated service [of the summary judgment order] to the parties," and that the Bank therefore was entitled to relief under OCGA § 9-11-60 (g). The trial court also rejected the defendants's argument predicated on the law-of-the-case rule, concluding that the rule was inapplicable under the circumstances of the present case, where this Court left open for resolution by the trial court the question

---

[5] OCGA § 9-11-60 (h) provides:

*Law of the case rule.* The law of the case rule is abolished; but generally judgments and orders shall not be set aside or modified without just cause and, in setting aside or otherwise modifying judgments and orders, the court shall consider whether rights have vested thereunder and whether or not innocent parties would be injured thereby; provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be.

of whether the summary judgment order should be set aside and re-entered. After the trial court re-entered its summary judgment order, these companion appeals followed.

*Case No. A25A0152*

1. The Bank contends that the trial court erred in granting summary judgment to the defendants based on the statute of limitation because that there were genuine issues of material fact as to when the alleged mistake in the legal description of the collateral contained in the Third Security Deed should have been discovered through the exercise of reasonable diligence.

"On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law." (Citation and punctuation omitted.) *Wilson v. Obstetrics & Gynecology of Atlanta*, 304 Ga. App. 300, 301 (696 SE2d 339) (2010). See OCGA § 9-11-56 (c). A defendant who moves for summary judgment based on the affirmative defense of the statute of limitation must present evidence that the limitation period has run. *Williams v. Durden*, 347 Ga. App. 363, 364 (819 SE2d 524) (2018). Once the defendant makes a prima facie showing that the

limitation period has expired, the burden of persuasion shifts to the plaintiff to present some "evidence which creates a jury issue on an element of the affirmative defense." (Citation and punctuation omitted.) *Ferguson v. Spraggins*, 371 Ga. App. 727, 728 (902 SE2d 708) (2024). See *Williams*, 347 Ga. App. at 364. But "if the plaintiff is unable to meet this burden of production, the defendant is entitled to summary judgment as a matter of law." (Citation and punctuation omitted.) *Ferguson*, 371 Ga. App. at 728.

As to claims for equitable reformation, it is well-established that

> [e]quity will relieve against mutual mistake, but only at the instance of a complainant who moves with reasonable diligence. An action to reform a written document may be brought within seven years from the time the cause of action accrues. As a general rule, the statute of limitation does not commence to run against an equitable action for reformation of a written instrument based on mutual mistake or fraud until the mistake or fraud has been, or by the exercise of reasonable diligence should have been, discovered.

(Citation and punctuation omitted.) *Cohen v. Wachovia Mtg. Corp.*, 332 Ga. App. 109, 110 (770 SE2d 17) (2015).[6] See *Haffner v. Davis*, 290 Ga. 753, 756 (3) (725 SE2d 286)

---

[6] "An equitable exception to the statute of limitation exists . . . where reformation would not prejudice the original parties to the document, their privies, or any subsequent bona fide purchasers for value that lacked notice of the mistake." *JPMorgan Chase Bank, N. A. v. DelPiano*, 356 Ga. App. 354, 357 (1) (847 SE2d 369)

(2012). JPMorgan, as assignee of the Third Security Deed, "took the security deed subject to the defense of the bar of the statute of limitation and stood in the shoes of [WaMu] insofar as when the claim for reformation of the security deed began to accrue." *The Cline Drive Land Trust v. Wells Fargo Bank, N.A.*, 339 Ga. App. 342, 346 (793 SE2d 550) (2016). See *JPMorgan Chase Bank, N. A. v. DelPiano*, 356 Ga. App. 354, 357 (1) (847 SE2d 369) (2020) ("An assignee takes the assignment subject to defenses against the assignor, including the defense of the bar of the statute of limitation.") (citation and punctuation omitted).

Here, there was evidence that WaMu should have discovered, through the exercise of reasonable diligence, the alleged mistake in the legal description of the collateral by no later than August 27, 2007, when the second refinancing of the loan closed and the Third Security Deed was executed. As the lender on the prior loans to

---

(2020). Under this exception, "equitable relief in the form of contract reformation [can be granted] outside the seven-year [limitation] period, even if the party seeking reformation failed to exercise reasonable diligence in discovering the mistake." (Citation and punctuation omitted.) Id. In the present case, however, the trial court ruled that this exception did not apply because the uncontroverted evidence showed that the defendants would be prejudiced by an extension of the limitation period, and the Bank does not challenge that ruling on appeal.

Hines, WaMu had available to it the appraisal reports, tax and insurance documents, and a closing checklist indicating that the intended collateral was over 60 acres in size and included an owner occupied residence. However, a cursory examination of the metes and bounds' distances in the deeds would have revealed that the legal description as written could not comprise 60 acres — the description, measured in feet, listed the starting and turning points for distances for the conveyed property as 462.78, 672, 741.48, 202.03, 350, and 202.03. Moreover, the legal description of the collateral in the two appraisal reports referenced two additional land lots that were not referenced in the legal description recited in the deeds. WaMu, as the lender on the original and subsequent loans, had notice of these discrepancies that were apparent on the face of the pertinent documents. See *Cohen*, 332 Ga. App. at 111 (1) (concluding that mortgage corporation, as "the lender on one of the prior loans on the subject property," had actual notice of prior loan documents). Additionally, it is undisputed that WaMu did not obtain a title report when the loan was twice refinanced in 2007, and thus, as conceded by the Bank in the court below and on appeal, "did not see that the legal description was incorrect."

Given this record, there was evidence that had it exercised reasonable diligence, WaMu could have discovered the alleged mistake in the legal description by the time that it refinanced the loan for a second time in August 2007. See *Layfield v. Sanford*, 247 Ga. 92, 93 (274 SE2d 450) (1981) (concluding that the plaintiffs failed to exercise due diligence to discover an alleged mistake in the deed's description of the boundary line of the land by, among other things, failing to read the deed); *Cohen*, 332 Ga. App. at 110, 111 (1) (holding that mortgage corporation should have known of mistaken omission from loan documents that were executed in connection with a "refinance loan" in 2002, where the record reflected that "had [the corporation] conducted an examination of the public property records in 2002, it would have shown" that there was an omission). Accordingly, the defendants made a prima facie showing that the limitation period began to run in August 2007, and the burden of persuasion shifted to the Bank to present some evidence that created a jury issue on WaMu's reasonable diligence in discovering the alleged mutual mistake. See *Ferguson*, 371 Ga. App. at 728.

In its brief opposing the summary judgment motion, the Bank asserted that it was reasonable for WaMu not to obtain a new title report when it refinanced the existing bank loan to Hines because only the original financing "required a full title to

be run."[7] But assertions in a brief are not evidence. See *In/Ex Systems v. Masud*, 352 Ga. App. 722, 722 (1) (835 SE2d 799) (2019). In light of the aforementioned evidence reflecting that the Bank should have discovered the mistake in the legal description of the collateral, the Bank was not permitted to rest upon mere assertions regarding whether a new title report should have been run, but instead was required to respond by affidavits or other competent evidence that "set forth specific facts showing that there is a genuine issue for trial." OCGA § 9-11-56 (e). See *Gallagher v. Buckhead Community Bank*, 299 Ga. App. 622, 627-628 (2) (683 SE2d 50) (2009). In this case, however, the Bank failed to present an expert affidavit reflecting industry standards or cite to any other competent evidence or legal authority to support its assertion that WaMu acted reasonably in declining to obtain a new title report in connection with the refinancing of the loan. Furthermore, the Bank's contention that WaMu was not required to run a new title search failed to address the discrepancy between the alleged 60 acres of collateral and the metes and bounds recited in the legal description in the deeds, as well as the discrepancy in the identified land lots found in the appraisal

---

[7] The Bank did not explain why WaMu failed to discover the mistake in the legal description of the collateral from the title report that it says was prepared at the time of the loan's origination.

14

reports and deeds — discrepancies that, standing alone, established a prima facie case that the limitation period began to run by August 2007. The Bank thus failed to create a genuine issue of material fact on the issue of reasonable diligence.[8]

It was "incumbent on the [Bank], in order to repel the presumption of unreasonable delay, to [point to] the impediments to an earlier prosecution of [its]

---

[8] The dissent argues that a genuine issue of material fact exists on the question of reasonable diligence based on a "property verification report" paid for by WaMu and an August 2007 "closing documents checklist" that included a checkmark beside the requirement that WaMu "[m]ake sure the legal description matches what was sent by the title company or alternative services vendor" and "that the first and last sentences on the printed document match the title report or property report tab in CLS." But the Bank did not refer to or rely on either of those documents in its brief opposing the motion for summary judgment in the court below or in its brief on appeal. The "property verification report" is not included in the record; rather, it is simply referenced in a list of "Lender Paid Fees and Charges" on a truth-in-lending disclosure form with no explanation of what was included in the report or what the report showed. Nor is there any explanation in the record of the "closing documents checklist" or of what specific steps were taken by WaMu to comply with the checklist. Indeed, the truth-in-lending disclosure form and "closing documents checklist" were attached as exhibits to the *defendants*' supplemental brief filed in support of their motion for summary judgment. Given the absence of any explanation in the record for these documents, summary judgment was properly granted to the defendants, as "summary judgment cannot be avoided based on mere speculation and conjecture" as to what these documents might mean. (Citation and punctuation omitted.) *Hatchett v. McCain Property Care*, 369 Ga. App. 71, 73 (2) (892 SE2d 174) (2023). Moreover, neither document is sufficient to create a genuine issue of material fact on the issue of reasonable diligence in light of the acreage and land lot discrepancies apparent on the face of the loan documents.

claim. This was not done." *Parker v. Fisher*, 207 Ga. 3, 7 (59 SE2d 715) (1950). See *Cohen*, 332 Ga. App. at 111-112 (1) (concluding that equitable reformation claim failed, where the plaintiff bank "waited nine years before it aroused itself from lethargy" and pointed to no impediments to its discovery of the alleged mistake prior to the closing of the loan). As our Supreme Court has emphasized, "[a] plaintiff cannot sit quietly by for a length of time exceeding that named in the statute of limitations, and avoid its operation and save his cause of action by the mere allegation that he made the discovery only recently." (Citation and punctuation omitted.) *Evans*, 266 Ga. at 770 (2). Under the circumstances here, the trial court committed no error in concluding that the Bank's suit for equitable reformation of the Third Security Deed accrued by August 27, 2007, and thus was time-barred.

*Case No. A25A0153*

2. The defendants contend that the trial court erred in setting aside and re-entering its summary judgment order.

Pursuant to OCGA § 15-6-21 (c), a trial judge has "the duty . . . to file his or her decision with the clerk of the court in which the case[ is] pending and to notify the attorney or attorneys of the losing party of his or her decision."

16

Ordinarily, the losing party must pursue his appeal in a timely manner as required by the Appellate Practice Act. But where no notice is sent by the trial court or by the clerk to the losing party, . . . an action may be brought under OCGA § 9–11–60 (g) to set aside the earlier judgment; and upon a finding that notice was not provided as required by OCGA § 15–6–21 (c), the motion to set aside may be granted, the judgment re-entered, and the thirty-day period within which the losing party must appeal will begin to run from the date of the re-entry.

(Citation and punctuation omitted.) *Wal-Mart Stores v. Parker*, 283 Ga. App. 708, 708-709 (642 SE2d 387) (2007). See *Veasley v. State*, 272 Ga. 837, 838 (537 SE2d 42) (2000); *Cambron*, 246 Ga. at 148-149 (1).

In setting aside and re-entering the summary judgment order, the trial court found that notice had not been properly provided to the Bank, and on appeal, the defendants do not contest this finding. Rather, the defendants argue that this Court's dismissal of the Bank's prior appeal of the summary judgment order constituted binding law of the case under OCGA § 9-11-60 (h) such that the trial court was precluded from considering the Bank's request to have that order set aside and re-entered. We disagree in light of the express language of our prior dismissal order.

17

Under the law-of-the-case doctrine, a ruling by this Court "in a case shall be binding in all subsequent proceedings in that case in the lower court." OCGA § 9-11-60 (h). Thus, "dismissal of [a] previous appeal constitutes binding law of the case and precludes appellate review of issues raised in [the] previous appeal." (Citation and punctuation omitted.) *Williams v. State*, 335 Ga. App. 468, 469 (1) (781 SE2d 791) (2016). See *Howard v. State*, 289 Ga. 207, 207 (1) (710 SE2d 761) (2011) ("Because [the appellant] cannot re-litigate here the same issues that were dismissed in his prior appeals, these claims will not be considered."). "But the doctrine applies only to actual decisions, not to issues raised but never ruled upon." (Citation and punctuation omitted.) *Sovereign Healthcare v. Mariner Health Care Mgmt. Co.*, 329 Ga. App. 782, 785 (1) (a) (766 SE2d 172) (2014). See *Shadix v. Carroll County*, 274 Ga. 560, 563 (1) (554 SE2d 465) (2001). And, here, our order dismissing the Bank's prior appeal expressly left open for resolution by the trial court following dismissal whether the Bank was provided with proper notice of the summary judgment order and whether that order should be set aside and re-entered. While an appellant "cannot use procedural maneuvers to contrive a second appeal" from a dismissed order or otherwise take steps to circumvent a ruling of this Court, *Houston County v. Harrell*,

287 Ga. 162, 164 (695 SE2d 29) (2010), that is not what occurred in this case, where we reserved ruling on the very issue decided by the trial court. Under these circumstances, the law-of-the-case doctrine was inapplicable, and the trial court did not err in setting aside and re-entering its summary judgment order. See *Wipfel v. State*, 320 Ga. 84, 85, n. 1 (907 SE2d 639) (2024) (noting that appellant timely appealed from the trial court's order setting aside and re-entering its February 2022 order, in case where the original appeal from the February 2022 order had been dismissed as untimely, but the Supreme Court's dismissal of the original appeal advised the appellant that he could file a motion to set aside the February 2022 order in the trial court for lack of notice); *Moore v. State*, 305 Ga. 699, 701 (2) (827 SE2d 657) (2019) (concluding that trial court erred in denying motion to set aside and re-enter order on ground that the court was bound by prior appeal, where the Supreme Court advised in the prior appeal that if proper notice had not been given to the appellant by the trial court, the appellant could move to have that order set aside).

*Judgments affirmed. Brown, C. J., concurs. Watkins, J., concurs fully to Division 2 and dissents to Division 1.*

A25A0152. JPMORGAN CHASE BANK, N.A. v. WHITAKER et

al.

A25A0153. IRACI v. JPMORGAN CHASE BANK, N.A.


WATKINS, Judge, concurring in part and dissenting in part.

I respectfully dissent to Division 1 of the majority's opinion. Simply put, "issues concerning a plaintiff's diligence usually must be resolved by the trier of

fact,"[1] and I do not believe this is a case where the question can be resolved as a matter of law.

An action to reform a written document may be brought within seven years from the time the cause of action accrues. As a general rule, the statute of limitation does not commence to run against an equitable action for reformation of a written instrument based on mutual mistake or fraud until the mistake or fraud has been, or by the exercise of reasonable diligence should have been, discovered.[2]

On motion for summary judgment based upon the running of the statute of limitation, the movant has only the burden of proof as to an affirmative defense of the running of the statute of limitation and not to establish the absence of facts showing a tolling. The burden of persuasion that the statute of limitation has not attached then falls to the plaintiff to present *some evidence* showing that an issue exists that the statute has not run but has been tolled.[3]

---

[1] See *Merrill Ranch Properties, LLC v. Austell*, 336 Ga. App. 722, 733 (4) (784 SE2d 125) (2016) (where defendant argued that plaintiff's fraudulent transfer claim was brought after the limitations period expired, the question of when the transfer "was or could reasonably have been discovered" by the plaintiff was for the jury).

[2] *Cohen v. Wachovia Mortgage Corp.*, 332 Ga. App. 109, 110 (770 SE2d 17) (2015).

[3] (Citations and punctuation omitted; emphasis supplied.) *Mayfield v. Heiman*, 317 Ga. App. 322, 328 (2) (730 SE2d 685) (2012).

In this case, the record would not support a finding the plaintiff failed to engage in *any* degree of diligence with respect to discovering the alleged mistake. Indeed, in the trial court's order on summary judgment, the court recognized that WaMu undertook two specific tasks when closing the August 2007 loan: Bank employees completed a Closing Documents Checklist, and a third party conducted a "title examination." According to the evidence in the record, the Closing Documents Checklist was an internal checklist that required WaMu employees to "[m]ake sure the legal description matches what was sent by the title company or alternative services vendor[, by] checking that the first and last sentences on the printed document match the title report or property report tab in CLS." And the third-party's title review appears to have been a "property verification report" rather than a full title search. (note payment to Group 9). The trial court specifically discussed both the Closing Documents Checklist and the third party title report in its order granting summary judgment, and the court concluded that if there was an error in the collateral's legal description, "reasonable diligence by any of [the individuals who performed those tasks] should have discovered the error[.]" But nothing in the record establishes why that is so. In other words, nothing in the record tells us why a lack of reasonable diligence in the execution of the Closing Documents Checklist or the third

3

party report is the reason those tasks did not cause the alleged mistake to be discovered.

It is true that in some deed-reformation cases, courts have found as a matter of law that reasonable diligence would have revealed the alleged mistake at the time the deed was executed. But the present case is easily distinguishable from those cases. In *Cohen v. Wachovia Mortgage Corporation*, the alleged mistake was that the loan documents and security deed were signed by only one of the two individuals who owned the property.[4] Because even a cursory review of either the public property records or the lender's own files would have shown the lender that there were two owners of the subject property, we concluded that the lender should have known, at the time the refinance loan was executed, that one of the property's owners had not participated in the loan.[5] Here, unlike in *Cohen*, it is not clear that the alleged mistake

---

[4] 332 Ga. App. at 110.

[5] Id. at 110. See also *Ehlers v. Upper West Side, LLC*, 292 Ga. 151 (733 SE2d 723) (2012) (where deed described the property as a strip of land 25 feet wide by 200 feet long (which would amount to one acre), but the purchaser intended to purchase an eight-acre tract, the Supreme Court concluded that the limitation period for the purchaser's claim to reform the deed began to run when the deed was executed); *Haffner v. Davis*, 290 Ga. 753, 756 (3) (725 SE2d 286) (2012) (where purchaser believed a home was on the tract of land described in the deed — but the home was actually located on an adjacent tract — the Supreme Court concluded that the

would have been apparent upon even a cursory review of the described property's

public records or of the lender's own files.[6] Instead, it appears that a review of those

records would have revealed that the property was owned by the same person who was

taking out the August 2007 loan[7] and that the legal description for the August 2007

limitation period for the purchaser's claim to reform the deed began to run when the deed was executed because the deed referred to a survey which depicted the residence on the adjacent, rather than purchased, tract and the purchaser did not show any impediment that prevented him from reviewing the referred-to survey and discovering the mistake at the time of purchase); cf. *McCall v. Williams*, 326 Ga. App. 99, 100 (1) (756 SE2d 251) (2014) (where petitioners sought to set aside a deed on the ground that the seller fraudulently told them the document conveyed only an easement, the limitation period — which did "not commence until the fraud [was] or should have been discovered in the exercise of due diligence" — began to run when the petitioners executed the deed because simply reading the document would have revealed that it was actually a deed rather than an easement).

[6] I cannot agree with the majority's conclusion that, *as a matter of law*, the Bank should have realized that the legal description did not match the intended collateral by performing a "cursory examination" of the metes and bounds distances listed in the legal description or by comparing the land lots identified in the appraisal to those listed in the legal description. And notably, neither the trial court in its order granting summary judgment nor the defendants in their appellees' brief on appeal pointed to those specific elements as support for their position that reasonable diligence by the Bank would have revealed the alleged mistake.

[7] I recognize the Bank asserts in its brief on appeal, presumably in support of its contention that the parties did not intend the smaller tract to serve as collateral for the loans, that N.R. Hines did not own the smaller tract when he executed the loans. But nothing in the record establishes (or even suggests) that N.R. Hines was no longer the owner of that tract when he executed the loans. See especially A24A1259 V2. 434, 445, 164, 175-176 (cited by the Bank in support of that assertion)

5

loan's collateral matched the description for the prior loans' collateral — which prior loans were, again, issued to the same borrower. (June 2007 loan modification) Thus, unlike in *Cohen*, the alleged mistake in the description of the loan's collateral could not have been identified merely by a cursory review of the public property records or the lender's own files.

Additionally, unlike in *Evans v. Lipscomb*, this is not a situation where the alleged mistake would have been apparent upon a visual inspection of the property by the resident of one of the lots at issue.[8] The security deed did not include any reference to a landmark; no road or similarly visible feature of the property was referenced in the legal description of the collateral. And while it is true that the parcels at issue were vastly different in size — the intended collateral was 62 acres while the described property was less than 1 acre — the security deed did not describe the collateral in terms of acreage. The deed did not even describe the collateral by address.

---

[8] *Evans v. Lipscomb*, 266 Ga. 767, 770 (1) (470 SE2d 641) (1996) (where co-owners of real property divided the property in two parts — with a certain road as the boundary line between the parcels — and a subsequent owner brought a reformation claim seeking to reform the deeds to match the original owners' intention to divide the property equally, the Supreme Court concluded that the limitation period ran from the date the boundary line agreement was executed, not from when the disparity in parcel sizes was discovered, because a visual inspection of the property "should have made [the then-owner] aware of the disparity in the two parcels").

Instead, the deed described the property only by metes and bounds. See A24A1259, V2. 280-287 (Aug. 2007 security deed), 277 (legible copy – was attached to the earlier loan) This is, in my view, markedly different than the description in *Evans*.

In analagous cases involving whether the plaintiff exercised reasonable diligence to discover fraud (rather than mistake), we have held that "[w]here there are facts involving fraud and excuses for delay in discovering the same, the question is one of mixed law and fact, and is one for determination by the jury under proper instructions from the court."[9] Thus, in a case where the allegations involved theft by an employee and the defendant argued that the statute of limitation was not tolled because the employer did not exercise reasonable diligence in monitoring the employee, we concluded that the question of whether the employer properly monitored the employee's behavior was a question of fact for the jury. Specifically, we concluded that "[the employer's] internal practices with regard to inventory control and the monitoring of its own employees do not demand a judgment as a matter of law, but they certainly can be considered by the jury in deciding the issue of [the employer's]

---

[9] (Citation and punctuation omitted) *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 245 (2) (590 SE2d 224) (2003). See also *American National Holding Corp. v. EMM Credit, LLC*, 323 Ga. App. 655, 657 (1) (b) (756 SE2d 1) (2013) (same).

diligence in discovering the fraud."[10] Here, as in that case, the record includes some evidence of the procedures WaMu undertook to guard against mistakes in the loan documents. On these facts, I believe the trial court erred by granting summary judgment to the defendants, and I dissent to Division 1 of the majority's opinion.

---

[10] *Fed. Ins. Co.*, 264 Ga. App. at 244-245 (2).